ALTENBERND, Judge.
Betty J. Gerren appeals an order finding her in indirect criminal contempt and sentencing her to 5 months and 29 days in the Pinellas County Jail. We reverse because *86 the amended order to show cause failed to allege the essential facts constituting the criminal contempt charged.
I. THE CIRCUMSTANCES PRECEDING THE ISSUANCE OF THE ORDER TO SHOW CAUSE
On March 18, 1993, Ruth M. Meyer, then 84 years old, was adjudicated totally incapacitated. Kathryn Sanders, who had been Ms. Meyer’s limited guardian since 1991, was appointed her plenary guardian. Ms. Sanders employed Betty Gerren and her husband to be Ms. Meyer’s paid, full-time caretakers. Thereafter, Ms. Meyer lived in the Gerrens’ home, essentially as a severely disabled member of the family. The Gerrens had another ward in their home and cared for several other wards at a separate location.
It appears that the trial court became concerned during a hearing in early August 1994 that the relationship between Ms. Sanders and the Gerrens involved an economic conflict of interest and that Ms. Meyer and her property might be at risk. As a result, the trial court, on its own motion, appointed an attorney ad litem to represent Ms. Meyer. It also appointed a monitor pursuant to section 744.107, Florida Statutes (1989). At the same time, the trial court ordered an independent medical evaluation of Ms. Meyer.
In mid-August 1994, the nurse performing the independent medical evaluation reported that Ms. Meyer was non-ambulatory and non-verbal, and suffered from dementia and cerebral insufficiency. She required total care. This nurse concluded that the level and quality of care Ms. Meyer was receiving was “outstanding” and recommended that she remain with the Gerrens. Ms. Sanders also had Ms. Meyer re-examined by a nurse who had previously evaluated her condition in 1993.[1] This nurse concluded that Ms. Meyer was “extremely well cared for” in “a bright, private room close to the center of the family’s activity.” She, too, recommended that Ms. Meyer not be removed from the Gerrens’ home. Additionally, both nurses reported that the family took Ms. Meyer for outings in their recreational vehicle and one nurse noted Mr. Gerren had said that Ms. Meyer “did quite well” on these trips. Both nurses agreed that Ms. Meyer would not receive the same high level of care in a nursing home, and neither believed the cost of nursing home care would be significantly less expensive.
On October 12, 1994, the monitor signed a report recommending that both the guardian and the caretakers be changed. The monitor was concerned with the conflict of interest in the relationship between the Gerrens and Ms. Sanders. He had also discovered that Mr. Gerren had pled guilty to grand theft in 1989. The monitor was critical of Ms. Sanders’ failure to document many matters in the court file and was also concerned about the security of Ms. Meyer’s property.
The fitness of Ms. Sanders’ and the Ger-rens’ actions became the subject of a wide-ranging evidentiary hearing on October 14, 1994. The trial court was justifiably concerned with the Gerrens’ practice of taking Ms. Meyer for rides in their recreational vehicle, sometimes out-of-state, without a court order. It heard evidence of possible medication problems and about the business relationship between the Gerrens and Ms. Sanders. At the conclusion of the hearing, the trial court gave the attorney ad litem authority to petition for Ms. Sanders’ removal, and took the issue of “the residency of the ward under advisement.”
At a hearing held on October 26, 1994, Ms. Sanders tendered her resignation. The proposed successor guardian did not yet have a bond to protect the property of the ward. After considerable discussion, the trial court entered a handwritten order and a typed order with many handwritten changes that allowed Ms. Sanders to resign as guardian of the person, appointed Alison Carpenter as the successor guardian of the person, and apparently retained Ms. Sanders as guardian of the property until Ms. Carpenter obtained a proper bond.
The trial court did not discuss any change in Ms. Meyer’s residence at this hearing. The record contains nothing to indicate that the court took any step at the hearing to *87 resolve this issue, which it had taken under advisement at the October 14 hearing.
On the morning of October 27, 1994, Ms. Carpenter was informed that Ms. Meyer would be moved from the Gerrens’ home to Manor Care Nursing Home on the following day, Friday, October 28, and that a nursing assessment would have to be done prior to admission. According to Ms. Carpenter, she called Ms. Gerren around 10:00 a.m. and advised her that Ms. Meyer would be moved the following day and that Manor Care would contact her to schedule a nursing assessment “that afternoon” prior to the move. By “that afternoon,” we assume Ms. Carpenter meant the afternoon of October 27. Ms. Gerren testified that Ms. Carpenter called her and informed her that Ms. Meyer would be moved the following day and that someone from Manor Care would call her to schedule a nursing assessment. Ms. Gerren testified, however, that she did not know when the nursing home would call her. The trial court had never entered a written order or announced an oral ruling concerning the scheduled nursing assessment.
After the 10:00 a.m. telephone call with Ms. Carpenter on Thursday, October 27, the Gerrens took Ms. Meyer and the other ward for a ride in the recreational vehicle. Their motivation for this trip is a disputed issue which does not need to be resolved in this appeal. They spent a portion of the day with Ms. Sanders at a restaurant and some additional time at Fort DeSoto Park.
The representative from Manor Care assigned to perform the nursing assessment on Ms. Meyer attempted to contact Ms. Gerren, but discovered that the Gerrens were not at home. As a result, many people, including the trial judge, became concerned for Ms. Meyer’s safety. A friend contacted the Ger-rens on their car phone at about 4:30 p.m. Ms. Gerren tried to call the judge, who refused to speak to her. The judge signed an order at approximately 5:00 p.m. on October 27, directing Ms. Carpenter to change Ms. Meyer’s residence from the Gerrens’ home to a licensed care-giving facility by 5:00 p.m. the following day, Friday, October 28, 1994. This order further required court approval of the new residence. Although all parties agree that the trial judge signed the order on October 27, it was not filed until 2:03 p.m. on Friday, October 28.
The Gerrens returned home at approximately 5:30 p.m. on October 27 to find Ms. Carpenter and her attorney, the police, and an ambulance waiting to transfer Ms. Meyer to the nursing home pursuant to the trial court’s order. The ambulance immediately transported Ms. Meyer to Manor Care that evening. Ms. Meyer died in Manor Care about six weeks later.
II. THE ORDER TO SHOW CAUSE
The trial court, on its own motion, initiated contempt proceedings against Ms. Gerren and Ms. Sanders,[2] and appointed the attorney ad litem as special prosecutor. No affidavit was filed in support of either the initial order or the amended order to show cause, and no testimony was taken before either order was issued. The amended order directed Ms. Gerren to show cause why she should not be held in indirect criminal contempt “for interfering with the orderly administration of justice by attempting to frustrate, or impede the orders of the Court effectuating the transfer of Ruth Meyer from the custodial control of Kathryn Sanders to the successor guardian, Alison Carpenter on Thursday, October 27,1994.”
We have included the lengthy description of events leading up to October 27, 1994, because these events place this short amended order to show cause in its proper context. It is undisputed that the only order “on Thursday, October 27, 1994,” related to the transfer of Ms. Meyer’s residence, and that order was promptly obeyed by the Gerrens. In fact, Ms. Meyer was transferred to the nursing home a day earlier than the trial court’s order directed. Thus, the trial court must be referring either to the handwritten orders, which did not authorize a change of residence, or to some oral order that is not *88 apparent from any transcript in the record. Other than the change of residence issue, it is unclear what conduct the trial court regarded as attempting to frustrate the transfer of “custodial control.”
Typically, an order to show cause is issued pursuant to Florida Rule of Criminal Procedure 3.840 upon an affidavit or evidence in the record. See Paris v. Paris, 427 So.2d 1080 (Fla. 1st DCA 1983). The rule does, however, permit a trial court to issue the order on its own motion. Fla.R.Crim.P. 3.840(a). We assume that this is possible only if the judge somehow has adequate knowledge of the events that allegedly occurred outside the presence of the court and concludes that he or she can still fairly preside at the contempt hearing after preparing the charging document.
Even when the court initiates the contempt proceeding on its own motion, the order to show cause must state the essential facts constituting the contempt. See Wis-niewski v. Wisniewski, 657 So.2d 944 (Fla. 2d DCA 1995). The amended order in this ease contains legal conclusions but no factual allegations. This problem is exacerbated by the order’s lack of a supporting affidavit or evidentiary basis. See Brown v. State, 595 So.2d 259 (Fla. 2d DCA 1992). The record clearly reveals that by late October 1994, the trial judge had many disputed issues with the Gerrens and Ms. Sanders. It is also obvious upon reading the record that those issues cluttered the contempt proceeding because the trial judge never made clear, either in his orders to show cause or at the contempt hearing, what unambiguous court orders Ms. Gerren had attempted to frustrate and what specific conduct violated those orders. Accordingly, we reverse the contempt order on this basis. As such, it is unnecessary to address the remaining issues Ms. Gerren raises in this appeal.
Reversed and remanded.
FULMER and QUINCE, JJ., concur.

. This nurse’s 1993 evaluation of Ms. Meyer’s well-being and level of care was also favorable.

. The contempt order against Ms. Sanders is the subject of a separate appeal, and has been reversed on this same day for similar reasons.