714 So.2d 479 (1998)
Steven COLE, Petitioner/Appellant,
v.
STATE of Florida, Respondent/Appellee.
No. 98-01718.
District Court of Appeal of Florida, Second District.
June 1, 1998.
*481 James Marion Moorman, Public Defender, and Robert T. Connelly, Assistant Public Defender, Bartow, for Petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Anne E. Sheer, Assistant Attorney General, Tampa, for Respondent.
NORTHCUTT, Judge.
The circuit court for the Tenth Judicial Circuit convicted Steven Cole of indirect criminal contempt for violating the court's order directing him to complete a program of treatment for substance abuse. The court sentenced Cole to serve 90 days in jail, and directed that he be returned to court on June 4, 1998, for a hearing on his need for further substance abuse treatment.
Cole petitioned us for a writ of habeas corpus and for other relief. On May 14, 1998, we ordered his release, and we advised that this opinion would follow. We quash Cole's conviction and sentence for indirect criminal contempt. Further, we prohibit the circuit court to enforce or otherwise attempt to exercise jurisdiction pursuant to its February 12, 1998 involuntary treatment order.

BACKGROUND
Cole's road to the Polk County Jail is best understood by examining the vehicle that carried him along it.

The Marchman Act
In 1993 the legislature enacted the "Hal S. Marchman Alcohol and Other Drug Services Act of 1993," codified in chapter 397, Florida Statutes. Finding that substance abuse is a major health problem, the legislature declared that the chapter's purpose, among other things, was to "provide for a comprehensive continuum of accessible and quality substance abuse prevention, intervention, and treatment services in the least restrictive environment of optimum care ..." and to "establish a clear framework for the comprehensive provision of substance abuse services in the context of a coordinated and orderly system." § 397.305(2), (10), Fla. Stat. (1997).[1]
*482 In its first two parts, the Act directs the Department of Health and Rehabilitative Services (now the Department of Health, Ch. 96-403, § 8, at 1892, Laws of Florida) to develop a comprehensive state plan for the provision of substance abuse services, and it establishes qualifications and requirements for the licensure and regulation of substance abuse service providers. § 397.321, .401-.481, Fla. Stat. (1997).
Part III of the Act contains section 397.501, Florida Statutes (1997), entitled "Rights of clients." One of the enumerated rights is particularly relevant to this case: Subsection (8) provides that in any involuntary proceeding for substance abuse assessment, stabilization, or treatment, the client must be informed that he has the right to counsel. The client also is to be advised that if he cannot afford an attorney, he may ask the court to appoint one to represent him.
Parts IV and V of the Act address the provision of substance abuse assessment and treatment services on a voluntary or an involuntary basis, respectively. Part VI imposes restrictions on local ordinances addressing public substance abuse. Part VII authorizes courts to order persons accused or convicted of offenses to receive substance abuse services. Part VIII directs the Department of Corrections to assess arriving inmates for substance abuse impairment and to furnish them necessary services. Part IX establishes the Statewide Coordinator for Substance Abuse Impairment Prevention and Treatment. Part X directs the Department of Health and Rehabilitative Services to designate prototype juvenile addictions receiving facilities.

Involuntary Admissions Under the Marchman Act
Our focus is on Part V of the Act, governing "involuntary admissions procedures." These include non-court ordered admissions, such as protective custody and emergency admissions, as well as court ordered involuntary admissions, either for assessment and stabilization or for treatment.
Each statute authorizing one of the foregoing involuntary admissions sets forth criteria specific to the type of admission involved. However, all of the statutes include as a prerequisite the satisfaction of the test set forth in section 397.675, Florida Statutes (1997):
A person meets the criteria for involuntary admission if there is good faith reason to believe the person is substance abuse impaired and, because of such impairment:
(1) Has lost the power of self-control with respect to substance use; and either
(2)(a) Has inflicted, or threatened or attempted to inflict, or unless admitted is likely to inflict, physical harm on himself or herself or another; or
(b) Is in need of substance abuse services and, by reason of substance abuse impairment, his or her judgment has been so impaired that the person is incapable of appreciating his or her need for such services and of making a rational decision in regard thereto; however, mere refusal to receive such services does not constitute evidence of lack of judgment with respect to his or her need for such services.[2]
As mentioned, Part V of the Marchman Act authorizes two kinds of court ordered involuntary admissions, one for assessment and stabilization, and one for treatment. As to both, section 397.681, Florida Statutes (1997), grants the circuit courts jurisdiction to entertain such proceedings. It also emphasizes that at every stage of any such proceeding the person whose admission is sought has the right to counsel, and must be appointed an attorney if he cannot afford one.

Involuntary Assessment and Stabilization Under the Marchman Act
Involuntary admissions for assessment and stabilization are governed by Part V, subpart *483 F, of the Act.[3] Pursuant to section 397.6811, Florida Statutes (1997), a person who "appear[s] to meet the criteria" set forth in section 397.675, quoted above, may be involuntarily admitted to a licensed substance abuse service provider for assessment and/or stabilization for up to five days.
Under the statutory scheme, an involuntary assessment or stabilization proceeding may be commenced by the filing of a petition by, among others, any relative of the person alleged to be substance abuse impaired. § 397.6811(1).[4] The required contents of such a petition are set forth in section 397.6814, Florida Statutes (1997). Pertinent to our discussion are the requirements that the petition include a statement of the respondent's ability to afford an attorney, if known, and that it state facts to support the respondent's alleged need for involuntary assessment and stabilization. The latter must include:
(1) The reason for the petitioner's belief that the respondent is substance abuse impaired; and
(2) The reason for the petitioner's belief that because of such impairment the respondent has lost the power of self-control with respect to substance abuse; and either
(3)(a) The reason the petitioner believes that the respondent has inflicted or is likely to inflict physical harm on himself or herself or others unless admitted; or
(b) The reason the petitioner believes that the respondent's refusal to voluntarily receive care is based on judgment so impaired by reason of substance abuse that the respondent is incapable of appreciating his or her need for care and of making a rational decision regarding that need for care. If the respondent has refused to submit to an assessment, such refusal must be alleged in the petition.
When a petition is filed, the court is required by section 397.6815, Florida Statutes (1997), to ascertain whether the respondent is represented by an attorney. If not, the court must determine whether, on the basis of the petition, an attorney should be appointed. The statute further provides that the court must either issue a summons to the respondent and furnish him a copy of the petition and a notice of hearing, and to conduct a hearing on the petition within ten days; or, without appointing counsel, and relying solely on the contents of the petition, enter an ex parte order authorizing the respondent's involuntary assessment and stabilization. § 397.6815(1), (2).[5]
If a hearing is held, section 397.6818, Florida Statutes (1997), directs that the court must hear all relevant evidence, and then determine whether there is "a reasonable basis to believe" that the respondent meets the involuntary admission criteria of section 397.675. Based on that determination, the court must either dismiss the petition or enter an order authorizing the involuntary assessment and stabilization of the respondent. In the latter event, the order must include findings as to the availability and appropriateness of the least restrictive alternatives, *484 and the need for the appointment of an attorney to represent the respondent. Id.
A licensed substance abuse service provider may admit a client for involuntary assessment and stabilization for a period not to exceed five days. § 397.6819, Fla. Stat. (1997).[6] The assessment must be performed without unreasonable delay by a "qualified professional."[7] If the person who performs the assessment is not a physician, the assessment must be reviewed by a physician before the end of the assessment period. Id.
Section 397.6822, Florida Statutes (1997), entitled "Disposition of client after involuntary assessment," provides that based on the involuntary assessment, the qualified professional must do one of three things. First, he or she may release the client. Second, the professional may allow a consenting client to remain voluntarily at the licensed provider. Third, the professional may retain the client if a timely petition to admit the client for involuntary treatment has been filed.

Involuntary Treatment Under the Marchman Act
Involuntary treatment is governed by Part V, subpart G, of the Marchman Act. A person may be the subject of a petition for involuntary treatment if he or she meets the criteria for involuntary admission prescribed in section 397.675 and, in addition:
(1) Has been placed under protective custody pursuant to s. 397.677 within the previous 10 days;
(2) Has been subject to an emergency admission pursuant to s. 397.679 within the previous 10 days;
(3) Has been assessed by a qualified professional within 5 days;
(4) Has been subject to involuntary assessment and stabilization pursuant to s. 397.6818 within the previous 12 days; or
(5) Has been subject to alternative involuntary admission pursuant to s. 397.6822 within the previous 12 days.
§ 397.693, Fla. Stat. (1997).
The list of persons who may file the petition is generally the same as those who are authorized by section 397.6811(1) to seek the respondent's admission for assessment and stabilization. § 397.695, Fla. Stat. (1997).[8] The petition must contain the same information as that required of a petition for assessment and stabilization, and also must set forth the findings and recommendations of the assessment performed by the qualified professional. § 397.6951, Fla. Stat. (1997).
When a petition for involuntary treatment is filed, the court must immediately determine whether the respondent is represented by counsel or "whether the appointment of counsel is appropriate." Unlike subpart F, governing involuntary assessments and stabilizations, subpart G makes no allowance for an ex parte consideration of a petition for involuntary treatment. Rather, in every case the court must issue a summons to the respondent, furnish him or her a copy of the petition and a notice of hearing, and hold a hearing on the petition within ten days. § 397.6955, Fla. Stat. (1997).
At the hearing, the court must hear all relevant evidence, and must review the results of the assessment conducted by the qualified professional. The petitioner must prove by clear and convincing evidence that the respondent meets criteria that track the test for involuntary admissions set forth in section 397.675. § 397.6957(2), Fla. Stat. (1997). At the conclusion of the hearing the court must either dismiss the petition or order the respondent to undergo involuntary substance abuse treatment by a licensed service provider.
*485 A respondent may be subjected to involuntary treatment for up to 60 days.[9] An order for involuntary treatment "authorizes the licensed service provider to require the client to undergo such treatment as will benefit him or her...." The court is to retain jurisdiction over the case and the parties "for the entry of such further orders as the circumstances may require." § 397.697, Fla. Stat. (1997). At the end of the 60-day treatment period, or the period as extended pursuant to section 397.6975, Florida Statutes (1997), the client is automatically discharged. § 397.6977, Fla. Stat. (1997).

STEVEN COLE'S CASE[10]
On January 9, 1998, Lisa Cole Roberts filed in the circuit court in Polk County a pre-printed form petition entitled "Petition for Order for Involuntary Treatment for Substance Abuse." In it, Roberts claimed to be the sister of Steven Cole. The form contained printed allegations to the effect that the petitioner had reason to believe that the respondent met the criteria for involuntary admission set forth in section 397.675. In addition, Roberts's petition contained the following typewritten statement:
I observed Steven D. Cole do the following:
Over the last twenty (20) years I have observed him to be high on hundreds of occasions as evidenced by glazed eyes, fidgety and smelling of marijuana. He has told me over the years that he goes home on breaks from work to smoke marijuana. He has admitted to me that he uses marijuana and speed. He has given me bags of marijuana and drug paraphernalia to dispose of for him. Over the last three years and particularly the last months, he has become much worse as evidenced by his personality changing from loving to mean and vicious and on 10-23-97 HRS removed his children from the home because of suspected drug abuse. I have personally heard him on the phone making drug deals and talking about stealing property to pay for drugs.
The petition concluded with a printed prayer for the court "to evaluate said person and to order appropriate treatment."
The circuit court held a hearing on Roberts's petition on January 22, and that day entered a form "Order for Involuntary Assessment and Stabilization." The printed portions of this form order provided that by February 4 Cole was to appear at Tri-County Human Services, Inc., to be evaluated for a period of five days or less, "the results of that evaluation to be presented to this Court." Typewritten provisions of the order directed Cole to contact Tri-County by the next afternoon to make an appointment for the assessment, and to return to the court on February 12. The order did not state whether Cole was represented by counsel, or describe any inquiry into his need for appointed counsel. It is undisputed that Cole was unrepresented at the hearing.
Apparently, Cole did as he was directed. The record before us contains a February 5, 1998 letter from a Tri-County addictions counselor to Rochelle Rowles, of the circuit court probate division, advising that Cole had been evaluated that day. The letter stated that Cole had agreed to undergo treatment at Tri-County, and that the treatment program would consist of approximately 24 weeks of education, group therapy, and individual counseling. The program also called for Cole to submit to urinalyses and to attend "NA meetings."
On February 12, another hearing was held. At the conclusion of the hearing the court entered another form order entitled "Order for Involuntary Treatment for Substance Abuse." The order's only finding of fact was simply "Substance abuse." Then, "[o]n the basis of the above finding of facts," the order's *486 typewritten provisions committed Cole to treatment by Tri-County, to include 24 weeks of education, group therapy, and individual counseling. Cole also was to submit to urinalyses and attend NA meetings. The form order contained additional, printed, provisions directing Cole to
refrain from the use of mood-altering chemicals, participate in group therapy, participate in psycho-social assessment and treatment planning, receive individual counseling, participate in educational sessions, attend AA/NA meetings, take such medication as prescribed and follow all rules of the program and staff instructions, as authorized by Chapter [sic] 397.697, Florida Statutes, for a period not to exceed 60 days.
This order, like its January 22 predecessor, made no mention of Cole's representation by counsel, or of his need for appointment of counsel. It is undisputed that Cole was unrepresented at the hearing.
On February 25, 1998, the Tri-County addictions counselor wrote another letter to Rochelle Rowles:
This is to advise that the above client attended one treatment session of 24 on 2/9/98. He missed the next two sessions on 2/16/98 and 2/23/98 as well as a drug screen on 2/17/98. Since the client has missed three consecutive modalities it is assumed that he has abandoned treatment. You may wish to reschedule a hearing.
The letter was filed with the court on February 27. That day the circuit court issued an order directing Cole to appear on March 12 to show cause why he was not in indirect criminal contempt of court. Other than reciting that Cole had "failed to abide by" the February 12 order for involuntary treatment, the order did not specify his allegedly contumacious acts or omissions.
When Cole appeared at the March 12 show cause hearing, the court directed him immediately to submit to a urinalysis at the Polk County Drug Court. The written test results, reflecting that Cole's urine had tested positive for methamphetamine and tetrahydrocannabinol, were furnished to court, which, on March 17, issued an "Order to Take Into Custody." The order recited that at the March 12 hearing on the order to show cause Cole had been directed to submit to a drug screen, and that the results had been received. "[B]ased upon that evidence," the order directed the Polk County Sheriff's Department to take Cole into custody and deliver him to the Polk County Jail. Further, "STEVEN COLE shall be detained without bond in the Polk County Jail until he is brought as soon as possible before the undersigned for possible contempt of court proceedings under violation of Court Order."
Cole was arrested April 3, and booked into jail. The next morning, he was given a first appearance hearing. The order following this hearing reflected that the presiding judge appointed the public defender to represent Cole on the contempt of court charge. As required by the court's March 17 directive, Cole was ordered held without bond. The first appearance order was ambiguous as to when Cole's next court date was to be, reciting variously that it was "to be set," and that it was to be held on "6/4/98." To add to the confusion, the order contained the following comment, marked by an asterisk: "To see judge on Monday."
In any event, on April 9, without notice to or the presence of the public defender, Cole was tried on the criminal contempt charge. When the instant proceeding was begun in this court, we were not furnished a signed order reflecting this, but the State conceded that the trial took place as Cole contends. Moreover, our record contains the clerk's form "Memo of Sentence/Order of the Court"signed by Rochelle Rowlesindicating that on April 9 Cole appeared without counsel before the court on a charge described as "Marchman Act" and "Indirect Criminal Contempt." He was adjudicated guilty, and sentenced to 90 days in jail. The memo further recites that Cole is to return to court on June 4, at which time the court will "consider further treatment."
On May 7, Cole's assistant public defender filed in this court a petition for writ of habeas corpus, certiorari and/or mandamus. After considering the State's expedited response, on May 14 we issued an order granting the petition for writ of habeas corpus, directing *487 that Cole be released from jail, and advising that this opinion would be forthcoming.
At our direction the circuit court on May 22 furnished us its written order adjudicating and sentencing Cole on the indirect contempt of court charge. It states:
On April 9, 1998, the defendant, STEVEN COLE, came before the Court having been arrested on a pick-up order. The Court reviewed the court record in regard to this defendant. The court found
1. On January 22, 1998, Steven Cole came before the undersigned judge in a Marchman Act Hearing. The Court ordered that Mr. Cole submit himself to Tri-County for an evaluation and that he return to court on February 12, 1998.
2. On February 12, 1998, Steven Cole came before the Honorable E. Randolph Bentley, who found Mr. Cole had failed to get the ordered evaluation from Tri-County and Judge Bentley ordered Mr. Cole to submit himself to Tri-County for treatment.
3. The Honorable Charles A. Davis, Jr., as the presiding judge in this case, was notified that Mr. Cole had again failed to comply so on February 27, 1998, Judge Davis ordered Mr. Cole to appear on March 12, 1998 to show cause why he should not be found in contempt of court for his failure to comply with the lawful orders of the court. Mr. Cole appeared on March 12, 1998 before the Honorable William A. Norris, Jr., who ordered Mr. Cole to submit to a drug screen.
4. The Court was again notified that Mr. Cole had failed to submit as ordered for a drug screen and a pick-up order was entered for his arrest. Mr. Cole was arrested and came before the undersigned judge on April 9, 1998.
This Court reviewed these matters with Mr. Cole and heard his testimony. This Court found Steven Cole to be in contempt of court for his failure to follow the lawful orders of the court and sentenced him to 90 days in the Polk County Jail for his contempt of court. The defendant was ordered to be brought back before the court on June 4, 1998 at which time the Court will consider further treatment of this individual.
THIS COURT does, therefore,
ORDER AND ADJUDGE that STEVEN COLE is hereby found to be in contempt of court and does sentence him to serve 90 days in the Polk County Jail for this contempt of court. The Court does, further,
ORDER AND DIRECT that on June 4, 1998 at 1:30 p.m. Steven Cole is to be brought before the Honorable Charles A. Davis, Jr. for consideration of further treatment for Mr. Cole.
DONE AND ORDERED in Chambers in Bartow, Polk County, Florida this 21st day of May, 1998, nunc pro tunc to April 9, 1998.
 /s/ J. TIM STRICKLAND, Circuit
 Judge

RELIEF REQUESTED
In his petition Cole seeks three general categories of relief. First, he asks that we order his release from jail, pursuant to our authority to issue writs of habeas corpus. Second, he seeks certiorari review and quashal of his conviction and sentence for indirect criminal contempt, and of the order admitting him to involuntary substance abuse treatment. Third, Cole requests a writ of mandamus directing the judges of the Tenth Judicial Circuit to refrain from proceeding further with treatment without a proper petition, a legitimate evaluation, appointment of counsel, and proceedings in accordance with the law.
The State acknowledges that Cole is entitled to a writ of habeas corpus directing his release from jail. But it urges us to remand the matter to the circuit court with directions to begin the Marchman Act proceedings anew, and to reassess Cole for involuntary substance abuse treatment after appointing counsel to represent him. We decline to do so.

DISCUSSION
Cole's petition contains a lengthy list of alleged errors committed throughout his remarkable travail in the circuit court. Indeed, *488 the proceedings were flawed to an astonishing degree. In large part, however, we are powerless to correct the errors because they gave rise to orders that predated Cole's petition by more than thirty days. Therefore, those orders are beyond the reach of our appellate or certiorari jurisdiction. See Fla. R.App. P. 9.100(c) and 9.140(b)(3).[11]
Cole's petition for a writ of certiorari was filed within 30 days of his April 9 conviction and sentence for contempt of court. But certiorari is not the proper vehicle for challenging a conviction and sentence, because such matters are reviewable by direct appeal. Fla. R.App. P. 9.140(b)(1). We are obliged, however, to treat a request for an improper remedy as if it seeks a proper one. Article V, § 2(a), Florida Constitution; Fla. R.App. P. 9.040(c). Therefore, we treat Cole's certiorari petition as an appeal of his conviction and sentence.[12]
To the extent that Cole's petition seeks a writ of mandamus to prevent further improper proceedings in his own Marchman Act case, it is more properly treated as a petition for writ of prohibition. See Town of Manalapan v. Rechler, 674 So.2d 789 (Fla. 4th DCA) (mandamus not for use to prevent threat of future harm), review denied, 684 So.2d 1353 (Fla.1996); Dix v. Richardson, 427 So.2d 1067 (Fla. 1st DCA 1983) (prohibition issued to prevent enforcement of order that had already been entered).
Insofar as Cole asks that we employ our mandamus power to direct the judges of the circuit generally to conform their future Marchman Act proceedings to the law, we decline to do so. To be sure, the circuit's use of form petitions and orders that are facially deficient (as will be discussed) raises suspicions that Cole's ordeal was not an isolated case. But, as the State points out, the record before us contains only matters that are directly related to Cole; it does not prove his claim of a systemic disregard of respondents' rights in Marchman Act proceedings.
Even if we were to credit Cole's assertion, we would not be inclined to undertake continuous supervision of Marchman Act proceedings in the Tenth Judicial Circuit. See State v. Florida Coast Line Canal & Transp. Co., 73 Fla. 1006, 75 So. 582 (1917). Nor do we think it necessary; we are confident that the judges of that circuit possess both the desire and the ability to conduct their proceedings in conformity with the law.
That said, we make the following observations.

The Contempt Conviction
Cole's conviction of indirect criminal contempt of court was variously erroneous or void for the following reasons:
Cole was not given meaningful prior notice of the charges against him. The order to show cause stated merely that he had failed to abide by the February 12 order admitting him to involuntary substance abuse treatment. It did not specify the acts or omissions by which Cole was alleged to have violated that order, as required by Florida Rule of Criminal Procedure 3.840(a). See In re Guardianship of Meyer, 672 So.2d 85 (Fla. 2d DCA 1996).
The allegation giving rise to the order to show cause, i.e., the February 25 letter from the Tri-County addiction counselor to Rochelle Rowles, was not sworn, as required by rule 3.840(a). The same is true of the written report of the result of the drug screen Cole was ordered to undergo when he appeared at the March 12 hearing. See Hunt *489 v. State, 659 So.2d 363 (Fla. 1st DCA 1995) (show cause order based on unsworn police report was defective, and constituted fundamental error).
Moreover, although we have not been furnished transcripts of either the March 12 hearing on the order to show cause or the April 9 trial, the record suggests that the allegations against Cole changed in the interim.[13] The March 12 show cause hearing was predicated on an allegation that Cole had missed some counseling appointments and a drug test, presumably required by Tri-County. The March 17 arrest order stated that it was based on the "evidence" that Cole's urine had tested positive for drugs, apparently in violation of the prohibitions set forth in the February 12 order admitting Cole to involuntary substance abuse treatment.[14] Thus, it appears that Cole may well have been tried and convicted on a wholly different charge than the one underlying the show cause order. If so, that was a clear violation of rule 3.840, and of Cole's right to due process. See McCaleb v. Mathis, 459 So.2d 1162 (Fla. 2d DCA 1984).[15]
The written judgment is not informative as to the precise nature of the charges against Cole, for it includes findings of fact that contradict the record. For example, the judgment finds that on February 12 the court determined that Cole had failed to submit to an evaluation by Tri-County, as ordered on January 22. But the record contains no such finding. In fact, it demonstrates that Cole did submit to the evaluation as directed. Likewise, the finding that Cole "failed to submit as ordered for a drug screen" plainly contradicts the statement in the March 17 arrest order that the results of Cole's drug screen had been received by the court, and that "based upon that evidence," the court ordered Cole's arrest. Clearly, Cole's contempt conviction was based on wholly erroneous findings of fact.
Further, although at Cole's first appearance counsel was appointed to represent him on the contempt charge, he effectively was denied representation of counsel when he then was tried without notice to the public defender. This violated rule 3.840(d). See Stermer v. State, 609 So.2d 80 (Fla. 5th DCA 1992).
Proceedings on charges of indirect criminal contempt that do not conform to the requirements of rule 3.840 constitute fundamental error. See Giles v. Renew, 639 So.2d 701 (Fla. 2d DCA 1994). As we have seen, the contempt proceedings against Cole strayed far afield of the rule's mandates at every turn. Beyond thatand, if possible, even more fundamentallythe order that Cole was alleged to have violated was unenforceable by contempt or otherwise because it was void for lack of subject matter and personal jurisdiction. See Dixon v. Melton, 515 So.2d 1309 (Fla. 1st DCA 1987); In re Elrod, 455 So.2d 1325 (Fla. 4th DCA 1984).

The Marchman Act Proceedings
We conclude that the February 12 order admitting Cole to involuntary substance abuse treatment was void for lack of subject matter and personal jurisdiction, and *490 that it was entered in violation of Cole's right to due process and his right to representation by counsel. Moreover, the form order's printed provisions included directives and prohibitions that were beyond the judicial authority granted by the Marchman Act.
Under the clear language of the Marchman Act, Part V, Subpart G, the jurisdiction of the circuit court to order a person admitted for involuntary substance abuse treatment can be invoked only by the filing of a petition for such by a person authorized by statute to do so. § 397.695, Fla. Stat. (1997). No such petition was filed in this case.
Lisa Roberts's January filing, although entitled a petition for treatment, did not suffice as such. The reason is that under section 397.693, a person may be the subject of a petition for court ordered involuntary substance abuse treatment only if he or she has been placed in protective custody or subjected to an emergency admission within the previous 10 days, has been assessed by a qualified professional within the previous 5 days, or has been involuntarily assessed or subjected to an alternative involuntary admission within the previous 12 days. Consistent with that limitation, a petition for involuntary treatment must set forth the findings and recommendations resulting from the respondent's assessment by the qualified professional. § 397.6951.
Of course, when Roberts filed her petition in January, Cole was not eligible as the subject of a petition for involuntary treatment because he had not been assessed, and the petition did not allege the results of any such assessment. The circuit court properly treated it not as a petition for involuntary treatment under Part V, subpart G, but as a petition for involuntary assessment and stabilization under Part V, subpart F.[16]
Considered as such, the petition invoked only the court's jurisdiction to order Cole's involuntary assessment and stabilization for up to five days. Barring a timely request under section 397.6821, Florida Statutes (1997), to extend the assessment period for up to seven more days, the court's subject matter jurisdiction and personal jurisdiction over Cole terminated upon completion of the assessment.[17] Absent the filing of a proper petition for involuntary treatment under Part V, Subpart G, the completion of the assessment left Cole free either to go on his way or to voluntarily undergo treatment.
In other words, although as a practical matter an assessment and stabilization proceeding often is the prologue to a treatment proceeding, the two are jurisdictionally and procedurally discreet. A petition for the former does not invoke the court's jurisdiction to order the latter. Therefore, the February 12 order admitting Cole to involuntary substance abuse treatment was void for lack of subject matter jurisdiction. See Gay v. McCaughan, 105 So.2d 771 (Fla.1958); C.N. v. State, 433 So.2d 661 (Fla. 3d DCA 1983) (having ordered outpatient care as alternative to involuntary hospitalization under Florida Mental Health Act, there was no statutory authority for court to retain jurisdiction for purpose of modifying action taken on an earlier petition; imposition of more restrictive intervention required a new petition for involuntary hospitalization, notice of hearing, and a hearing on the petition).
The court also lacked personal jurisdiction over Cole, because he was never *491 served with process in connection with the treatment proceeding. Section 397.6955 plainly requires the court to issue a summons to the respondent, and to furnish him a copy of the petition for involuntary substance abuse treatment and a notice of hearing on the petition. Here, of course, neither a petition for involuntary treatment nor a summons was served on Cole. And, because Cole's appearance on February 12 was compelled by the January 22 court order, it cannot be said that he voluntarily submitted himself to the court's jurisdiction. Therefore, the February 12 treatment order was void for lack of personal jurisdiction. See Wyatt v. Haese, 649 So.2d 905 (Fla. 4th DCA 1995).
Moreover, although the January 22 involuntary assessment order directed Cole to return to court on February 12, he was given no notice, either in that order or otherwise, that the hearing's purpose was to determine whether he should be admitted for involuntary treatment. Thus, the February 12 order was entered without notice, in violation of Cole's right to due process and contrary to the dictates of section 397.6955.
And, of course, there is the matter of Cole's indigence, as evidenced by the appointment of the public defender to represent him in the criminal contempt prosecution. Yet, at no time at any stage of either Marchman Act proceeding was Cole furnished counsel, despite the Act's guarantee that he was entitled to representation by an attorney at every stage of the involuntary proceedings. § 397.681(2), Fla. Stat. (1997).
The violation of Cole's rights to due process and to counsel rendered the February 12 order voidable. See McCaleb, 459 So.2d at 1163; Arthur v. Arthur, 543 So.2d 349 (Fla. 5th DCA 1989). The court's lack of subject matter and personal jurisdiction rendered the order absolutely void, and unenforceable by contempt. See Wyatt, 649 So.2d at 907; Elrod, 455 So.2d at 1326.
But even if the proceeding had not been so fundamentally flawed, the printed directory provisions of the February 12 form order would have been unenforceable because they exceeded the court's authority. Although the Act empowers the court to order a respondent's submission to involuntary substance abuse treatment, and, pursuant to section 397.697, to enter such further orders as the circumstances may require, that authority does not extend to prescribing the specific modalities of the treatment. Under the Act that authority is placed with the licensed service provider:
An involuntary treatment order authorizes the licensed service provider to require the client to undergo such treatment as will benefit him or her, including treatment at any licensable service component of a licensed service provider.
§ 397.697(3) (emphasis supplied).
Thus, the February 12 order properly directed Cole to follow all rules of the program and staff instructions. But its prohibition against Cole's use of mood-altering drugs, and its direction that he engage in specified therapeutic activities, were beyond the scope of the court's power, and were unenforceable. Cf. Dixon, 515 So.2d at 1311 (natural mother of child could not be held in contempt for refusing court ordered disclosure of legislatively mandated confidential information regarding identity of adoptive parents); Elrod, 455 So.2d at 1326 (person may safely disobey command of court if it attempts to enter order that transcends its power or authority); State ex rel. Dept. of H.R.S. v. Sepe, 291 So.2d 108 (Fla. 3d DCA 1974) (when ordering criminal defendant to state hospital, court proceeded without or in excess of jurisdiction by ordering specific method and duration of treatment).[18]

*492 CONCLUSION
The prosecution of Steven Cole for indirect criminal contempt was fundamentally flawed because it was undertaken to enforce a void order, and because it proceeded outside the strictures of rule 3.840 and Cole's right to due process of law. The result was a conviction founded on findings that were clearly contrary to the facts.
A writ of habeas corpus may be employed to secure the release of a person who is being unlawfully detained. See McCrae v. Wainwright, 439 So.2d 868 (Fla. 1983). Because Cole's incarceration was unlawful, we previously granted his petition for writ of habeas corpus, and we ordered his release.
Pursuant to our appellate jurisdiction, we quash Cole's conviction and sentence for indirect criminal contempt.
A writ of prohibition may be issued to quell a court's intended act in excess of its jurisdiction. See Anderson Inv. v. Lynch, 540 So.2d 832 (Fla. 4th DCA 1988). In this case, the circuit court has announced that on June 4 it will hold a hearing to consider Cole's need for further substance abuse treatment under the Marchman Act. As we have explained, the court has no jurisdiction to do so. Therefore, we grant the petition for writ of prohibition. Specifically, we prohibit the circuit court for the Tenth Judicial Circuit to enforce or otherwise attempt to exercise jurisdiction pursuant to its February 12, 1998, order committing Steven D. Cole for involuntary substance abuse treatment.
Writ of habeas corpus issued; writ of prohibition issued; conviction and sentence quashed.
WHATLEY, J., concurs.
ALTENBERND, A.C.J., concurs specially with opinion.
ALTENBERND, Acting Chief Judge, concurring.
Our record in this proceeding is extremely limited. We have received modest briefing and have not had the benefit of oral argument. We are under severe time constraints because additional court proceedings are scheduled in the trial court in early June. I agree that it was appropriate for this court to issue a writ of habeas corpus, and that the procedural irregularities that occurred require us to quash the conviction and sentence and return this case to the trial court for a fresh start.
Although our opinion is critical of the circuit court judges involved in this proceeding, it is worth emphasizing that there is virtually no precedent interpreting the Marchman Act. Our opinion demonstrates the complexity of the Act, which consumes more than fifty pages of Florida Statutes Annotated. Nevertheless, there are no standard rules of procedure published in the Florida Rules of Court to guide judges in this area. Apparently, no one has bothered to create uniform, standardized forms for statewide use in these proceedings. There are no published regulations in the Florida Administrative Code to assist the trial courts. This is true, even though the Act is now five years old.
It was not the job of these busy trial judges to create the needed regulations or the uniform statewide rules and forms. There appears to have been a systemic failure concerning the orderly implementation of the Marchman Act. These circuit court judges may be, at least to some degree, responsible for that failure, but it does not appear to me that they are the primary culprits. There is enough blame for Mr. Cole's difficulties to spread a thick coating across all branches and levels of government. Hopefully, those who can solve these problems will learn from Mr. Cole's experience and provide the assistance that these circuit court judges need.
NOTES
[1] We have found no appellate decision applying, construing, or passing on the constitutionality of the Marchman Act or any of its provisions. In this case, no one disputes the meaning of the Act's provisions, nor does Cole contend that any of them are unconstitutional. Therefore, in reaching our decision we are simply applying the Act, as we read it, to the facts of this case.
[2] Section 397.311(16), Florida Statutes (1997), defines "impaired" or "substance abuse impaired" as "a condition involving the use of alcoholic beverages or any psychoactive or mood-altering substance in such a manner as to induce mental, emotional, or physical problems and cause socially dysfunctional behavior."
[3] The Act defines "assessment" as "the systematic evaluation of information gathered to determine the nature and severity of the client's substance abuse problem and the client's need and motivation for services. Assessment entails the use of a psychosocial history supplemented, as required by rule, by medical examinations, laboratory testing, and psychometric measures." § 397.311(2). "Stabilization" means "(a) Alleviation of a crisis condition; or (b) Prevention of further deterioration, and connotes short-term emergency treatment." § 397.311(30).
[4] The petition may be filed by "the respondent's spouse or guardian, any relative, a private practitioner, the director of a licensed service provider or the director's designee, or any three adults who have personal knowledge of the respondent's substance abuse impairment." § 397.6811(1), Fla. Stat. (1997).
[5] Although it is not directly relevant to our decision, we note that the statute prescribes no criteria to govern the court's choice between holding a hearing on the petition and entering an ex parte order granting the petition. (Interestingly, the statute does not appear to authorize an ex parte order denying the petition.) Moreover, the provision in section 397.6815(2), Florida Statutes (1997), that the court may enter an ex parte order involuntarily admitting the client for assessment and stabilization without the appointment of counsel seemingly conflicts with the direction in section 397.681(2) that a respondent has the right to counsel "at every stage" of an involuntary admission proceeding.
[6] Section 397.6821, Florida Statutes (1997), provides a mechanism for extending the assessment and stabilization period for an additional seven days. It is not relevant here.
[7] A "qualified professional" is either a licensed physician or a person who has at least a master's degree in a social or behavioral science in a human services discipline and meets additional experience or certification requirements set forth at section 397.311(25).
[8] The list is not precisely the same. Under section 397.695(1), Florida Statutes (1997), a petition for involuntary treatment may be filed by "the respondent's spouse or guardian, any relative, a service provider, or any three adults who have personal knowledge of the respondent's substance abuse impairment and his or her prior course of assessment and treatment." Compare footnote 4, supra.
[9] As in the case of involuntary assessment and stabilization, the Act contains provisions, not relevant here, for extending the involuntary treatment period up to an additional 60 days. § 397.6975, Fla. Stat. (1997).
[10] Our description of Cole's case is taken from his petition to this court and the appendix that accompanied it. In its response, the State concurs in Cole's recitation, save for Cole's contention that his case is typical of all Marchman Act proceedings in the Tenth Judicial Circuit. As to the latter, the State points out merely that Cole's assertion is not supported by the record before this court.
[11] Thus, we have no appellate or certiorari jurisdiction over the January 22 order admitting Cole to involuntary assessment and stabilization, or the February 12 order admitting Cole to involuntary treatment.
[12] When Cole filed his petition in this court, the appeal of his conviction and sentence was premature, because they had not been rendered by the filing of a signed written order. See Fla. R.App. P. 9.020(h). Nevertheless, our appellate jurisdiction vested upon rendition of the May 21 order adjudicating and sentencing Cole for contempt of court. See Fla. R.App. P. 9.110(m) (a premature civil appeal is subject to dismissal, but jurisdiction vests if an appealable order is rendered before the appeal is dismissed); Fla. R.App. P. 9.140(a) (appeal proceedings in criminal cases shall be as in civil cases except as modified by rule). Cf. Williams v. State, 324 So.2d 74, 79-80 (Fla.1975) (notice of appeal following oral pronouncement of conviction and sentence was premature under prior Florida Appellate Rules, but appellate court's jurisdiction vested upon rendition of written judgment).
[13] We are unsure whether the trial was recorded, as required by law. See Blalock v. Rice, 707 So.2d 738, 740 (Fla. 2d DCA 1997). Cole's petition does not specifically allege that no court reporter was present at the trial, but he contends that it was error for the court to conduct Cole's trial without a court reporter. The State generally agrees with Cole's recitation of the facts, but does not directly address this point.
[14] In his petition, Cole challenges the legality of the circuit court's March 12 directive that he immediately submit to a urinalysis. Florida Rule of Criminal Procedure 3.220(C)(1) authorizes a court to require a defendant to permit the taking of samples of blood, hair, and other materials of the defendant's body, "subject to constitutional limitations." There is no question that this test constituted a search under the Fourth Amendment. See Chandler v. Miller, 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). Given our disposition of the case, however, we need not address whether the directive was supported by probable cause. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
[15] Additionally, although it is far too late for us to correct the error, we note that the arrest order improperly directed that upon Cole's arrest he was to be detained without bond. Florida Rule of Criminal Procedure 3.840(c) plainly states that a defendant arrested on a charge of indirect criminal contempt "shall be admitted to bail in the manner provided by law in criminal cases."
[16] This is not to say that Roberts's petition was sufficient under that part of the Marchman Act, either. Notably, it contained no statement regarding Cole's ability to afford an attorney, as required by section 397.6815. Moreover, although Roberts's petition recounted Cole's history of substance abuse, it contained nothing in regard to her reasons for believing that Cole had lost the power of self-control with respect to the substance abuse, or that Cole had inflicted or was likely to inflict physical harm on himself or others unless he was admitted, or that Cole's judgment was so impaired by his substance abuse that he was incapable of appreciating his need for care. § 397.6814(2), (3)(a), and (3)(b), Fla. Stat. (1997).
[17] Therefore, that portion of the January 22 assessment order that directed Cole to return to court on February 12a date that was beyond the five-day assessment periodwas erroneous. We also note that the January 22 order erroneously failed to "include the court's findings with respect to the availability and appropriateness of the least restrictive alternatives and the need for the appointment of an attorney to represent the respondent...." § 397.6818, Fla. Stat. (1997).
[18] In addition to the foregoing, the order contained legal errors that, as we previously explained, are beyond our reach. For one thing, the order expressly stated that Cole's admission to involuntary substance abuse treatment was based on the finding "substance abuse." That finding was insufficient to justify an admission to treatment. Under section 397.6957, Florida Statutes (1997), it must be proved by clear and convincing evidence that the respondent is "substance abuse impaired" (emphasis supplied), a term that is specifically defined in the Act. See footnote 2, supra. Further, the order directed Cole to submit to 24 weeks of treatment. The Act authorizes admission to involuntary treatment not to exceed 60 days, unless the treatment period is extended following the timely filing of a proper application. § 397.697(10), Fla. Stat. (1997).