924 So.2d 8 (2005)
The SARASOTA HERALD-TRIBUNE, Tampa Tribune, WFLA-TV News Channel 8, and the Herald, Petitioners,
v.
STATE of Florida and Joseph P. Smith, Respondents.
No. 2D05-5408.
District Court of Appeal of Florida, Second District.
November 22, 2005.
Rehearing Denied January 20, 2006.
*9 Gregg D. Thomas, James J. McGuire, and Rachel E. Fugate of Holland & Knight LLP, Tampa, for Petitioners.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Respondent, State of Florida.
*10 Elliott C. Metcalfe, Jr., Public Defender, and Adam Tebrugge, Assistant Public Defender, Sarasota; and James Marion Moorman, Public Defender, and Robert A. Young and Paul Valcore, Assistant Public Defenders, Bartow, for Respondent, Joseph Smith.
ALTENBERND, Judge.
The Sarasota Herald-Tribune, Tampa Tribune, WFLA-TV News Channel 8, and The Herald (the Media) petition this court to review an order entered by the trial court that excludes the press from viewing and inspecting crime scene photographs, crime scene videotapes, and autopsy photographs that were admitted into evidence in open court during the criminal trial of Joseph P. Smith for the murder of Carlie Brucia. The order actually prevents all members of the public from viewing these exhibits. We conclude that the statutes relied upon by the trial court to bar examination of this evidence by the Media do not apply to these exhibits that have been formally introduced into evidence in a pending criminal trial. Instead, the trial court was required to apply the analysis set forth in Florida Rule of Judicial Administration 2.051(c), which essentially codifies the holdings in Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla.1988), and Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla.1982). Under that analysis, we conclude that the four members of the Media who have asked to view the evidence have been improperly excluded from viewing it.
We emphasize that we are not holding that the Media is entitled to copies of this evidence or to publish it. The Media has not sought that relief and does not suggest that it has any interest in seeking that relief. We also emphasize that we are not holding that the trial court must make this evidence generally available for easy viewing by large numbers of people. Finally, our holding is limited to exhibits actually introduced into evidence. We have not been asked to determine any issue concerning exhibits that may have been identified but not admitted for use and examination by the jury, or concerning documents that were disclosed earlier in these proceedings and not used for any purpose during the trial.

I. PROCEEDING IN TRIAL COURT LEADING UP TO THIS APPELLATE PROCEEDING
The State indicted Joseph P. Smith, alleging that he kidnapped, sexually assaulted, and murdered a young girl, Carlie Brucia, on February 1, 2004. It is undisputed that many of the crime scene photographs and autopsy photographs related to these crimes are disturbing. Prior to the jury trial, the trial court entered orders restricting access to some of the documents that might otherwise have been accessible as court records. The Media did not challenge those orders.
At trial, however, the Media sought access to crime scene photographs, crime scene videotapes, and autopsy photographs that were actually introduced into evidence. The State did not wish to have the exhibits made public. The Media argued that the trial court should enter an order containing restrictions similar to those imposed by Judge Stan Morris in the trial of Danny Rolling, which would have permitted the Media to view and inspect the exhibits. See State v. Rolling, 22 Media L. Rep. (BNA) 2264, 1994 WL 722891 (Fla. 8th Cir.Ct.1994). Ultimately, the trial court was persuaded that the enactment of section 406.135, Florida Statutes (2005), and certain provisions in chapter 119, Florida Statutes (2005), required it to enter an order more restrictive than the order entered in the Rolling case. On November *11 10, the trial court orally ruled that it would bar all press and public access to certain exhibits that had been introduced into evidence. The evidence at issue includes five crime scene photographs that were admitted into evidence as State's exhibits 30, 32, 34, 35a, and 36. It also includes thirteen autopsy photographs that were admitted into evidence as State's exhibits 39-46, 48, 50, 51, 53, and 56. Finally, there is a videotape that was marked for identification as State's exhibit 31, but was redacted prior to admission into evidence. This court is uncertain whether the redacted videotape was introduced into evidence under a different exhibit number.
The Media challenged the trial court's oral ruling by filing a petition in this court pursuant to Florida Rule of Appellate Procedure 9.100(d), which permits expedited review of orders excluding the press. We instructed the trial court to render a written order, which was entered on November 17, 2005. Thus, the order that we are reviewing in this case pursuant to rule 9.100(d) is the order of November 17, 2005.[1]
Both the State and Mr. Smith have responded to the Media's petition, supporting the trial court's order. The State argues that the Media cannot bring this challenge because the Media did not challenge the earlier orders restricting access to documents pretrial. We conclude that the orders addressing pretrial issues are not dispositive of the Media's right to view exhibits introduced into evidence during a public, criminal trial.

II. THE CONSTITUTIONAL DIMENSIONS OF THIS CASE
The broadest issue in this case is whether the State can rely upon secret evidence to obtain a conviction for a capital offense. *12 Although Mr. Smith's trial has been broadcast on television and conducted in an open, public courtroom, these specific items of evidence have been concealed from all members of the public and the press. The disputed photographs are not in this court's record, and we have not chosen to view them. Nevertheless, we can fully understand that they must be extraordinarily distressing to family and friends of the young victim. However, these photographs are evidence in a trial where the State, on behalf of the people, is using its power to pursue the most extreme penalties. Secret evidence is the hallmark of an oppressive regime; it is not a policy generally acceptable in a free society with courts that must be open to the people to assure the legitimacy of those courts and the fairness of the proceedings that occur therein.
As a result of these concerns, the Media has challenged the trial court's ruling at a constitutional level. There is strong support for this argument. As the United States Supreme Court stated in Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947): "A trial is a public event. What transpires in the court room is public property. . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."
Allowing the public access to all aspects of a criminal trial "enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 569, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)). When the media attends a trial and reports on the proceedings, a larger segment of the public is afforded this important access.
The open trial thus plays as important a role in the administration of justice today as it did for centuries before our separation from England. The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system. Richmond Newspapers, Inc. v. Virginia, 448 U.S. at 569-571, 100 S.Ct. 2814.
Press-Enter. Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).
Although the openness of criminal trial proceedings helps to ensure fairness to the accused and provides the public with an assurance of that fairness, certain limited circumstances can exist in which a court would be justified in closing aspects of a proceeding to public scrutiny. Press-Enter. Co. v. Superior Court, 478 U.S. 1, 9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). "In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access." Id.
The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.
*13 Press-Enter., 464 U.S. at 510, 104 S.Ct. 819. "But the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one." Globe, 457 U.S. at 606, 102 S.Ct. 2613. "Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." Id. at 606-07, 102 S.Ct. 2613.
This case is somewhat unusual because the "compelling governmental interest" that may justify a restriction on disclosure does not primarily involve the defendant's privacy or his right to a fair trial. See, e.g., United States v. Posner, 594 F.Supp. 930 (S.D.Fla.1984). Instead, the interest to be protected is the privacy of the victim's family and friends. The supreme court has recognized that article I, section 23 of the Florida Constitution can form a constitutional basis for closure of court records or proceedings. See Barron, 531 So.2d at 118. Nevertheless, the privacy interests of persons who are family or friends of the victims of well-publicized crimes would seem to be a difficult interest to balance against the interests favoring public trial.
Although the facts of the petition and the order on review raise these important constitutional questions, we are required, whenever possible, to resolve a dispute without reaching the constitutional issues and without declaring statutes unconstitutional. See Singletary v. State, 322 So.2d 551 (Fla.1975). In its November 17, 2005, order, the trial court concluded that the specific exhibits were exempt and confidential, relying on the content of section 406.135 and chapter 119, Florida Statutes (2005). Without regard to their constitutionality, these statutes on their face do not render these exhibits confidential. Accordingly, resolution of this petition does not require that we review the constitutional sufficiency of any statute.

III. SECTION 406.135, FLORIDA STATUTES (2005)
Section 406.135 was enacted in response to efforts by some to obtain copies of autopsy photographs concerning the death of Dale Earnhardt. See Campus Commc'ns, Inc. v. Earnhardt, 821 So.2d 388 (Fla. 5th DCA 2002). Subsection 1 of that statute unambiguously states: "A photograph or video or audio recording of an autopsy in the custody of a medical examiner is confidential and exempt from the requirements of s. 119.07(1) and s. 24(a), Art. I of the State Constitution." (Emphasis supplied.) The exhibits in evidence in the trial court are not in the custody of a medical examiner as the records of the county medical examiner; they are in the custody of the clerk of court as circuit court records.
Moreover, section 406.135(3)(c) states that
a criminal . . . proceeding is exempt from this section, but unless otherwise exempted, is subject to all other provisions of chapter 119, provided however that this section does not prohibit a court in a criminal . . . proceeding upon good cause shown from restricting or otherwise controlling the disclosure of an autopsy, crime scene, or similar photograph or video or audio recordings in the manner prescribed herein.
Thus, the statute expressly exempts criminal court proceedings from its application. The legislature directs the reader to chapter 119 to determine whether it may provide some other applicable exemption. Although section 406.135 may not "prohibit" a court in a criminal proceeding *14 upon good cause shown from restricting or otherwise controlling the disclosure of an autopsy, crime scene, or similar photograph or video or audio recordings in the manner prescribed in that statute, as we will soon discover the regulation of the trial court in this function is controlled by rule 2.051, which establishes different tests to comply with constitutional requirements. Thus section 406.135 does not render these court exhibits confidential. If any statute accomplishes that act, it must be a provision in chapter 119.

IV. CHAPTER 119, FLORIDA STATUTES (2005)
The State argues that section 119.071(2)(h) provides the necessary exemption. That statute states:
(h) 1. Any criminal intelligence information or criminal investigative information including the photograph, name, address, or other fact or information which reveals the identity of the victim of the crime of sexual battery as defined in chapter 794; the identity of the victim of a lewd or lascivious offense committed upon or in the presence of a person less than 16 years of age, as defined in chapter 800; or the identity of the victim of the crime of child abuse as defined by chapter 827 and any criminal intelligence information or criminal investigative information or other criminal record, including those portions of court records and court proceedings, which may reveal the identity of a person who is a victim of any sexual offense, including a sexual offense proscribed in chapter 794, chapter 800, or chapter 827, is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution.
2. In addition to subparagraph 1., any criminal intelligence information or criminal investigative information that is a photograph, videotape, or image of any part of the body of the victim of a sexual offense prohibited under chapter 794, chapter 800, or chapter 827, regardless of whether the photograph, videotape, or image identifies the victim, is confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution. This exemption applies to photographs, videotapes, or images held as criminal intelligence information or criminal investigative information before, on, or after the effective date of the exemption.
Both subparagraphs of this statute apply to "criminal intelligence information or criminal investigative information." Those terms are defined in section 119.011(3), Florida Statutes (2005). That statute states:
(3)(a) "Criminal intelligence information" means information with respect to an identifiable person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity.
(b) "Criminal investigative information" means information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance.
The photographs at issue do not seem to fall within the definition of "criminal intelligence information." They do arguably fall within the definition of "criminal investigative information." The definition does not expressly discuss exhibits in public trials, but section 119.011(4)(a) defines a "criminal justice agency" to include a *15 "court."[2] Assuming without deciding that the exhibits introduced into evidence in this case may fall within this definition, section 119.07(6) provides:
Nothing in this chapter shall be construed to exempt from subsection (1) a public record that was made a part of a court file and that is not specifically closed by order of court, except . . . information or records that may reveal the identity of a person who is a victim of a sexual offense as provided in s. 119.071(2)(h).
(Emphasis supplied.) Subsection (1) contains the provisions permitting inspection of public records. Thus, because the photographs at issue in this case are part of a court file, they are not exempt unless they fall within the exception described in section 119.07(6) concerning records that reveal the identity of a victim.
The records at issue in the trial court may come within the description in section 119.071(2)(h)(2), but they do not come within the description in section 119.071(2)(h)(1). That is to say, practically everyone in this country already knows the name of this unfortunate child and the fact that she was a victim of a sexual offense. At this point no public record can be held secret because it might reveal the wellknown fact that Carlie Brucia was the victim of a sexual offense. See Staton v. McMillan, 597 So.2d 940 (Fla. 1st DCA 1992) (statutory exemptions from disclosure under Public Records Act do not apply if information has already been made public). Thus, the exception contained in section 119.07(6) does not apply. Nothing in chapter 119 exempts from disclosure these exhibits that have been made a part of a court file.

V. FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.051
Thus, if any lawful basis exists to maintain the secrecy of these photographs, it must be derived from another source. The only remaining possibility, not expressly addressed by the trial court, is rule 2.051. Rule 2.051(c)(9)(A)(v) does contain a ground that would permit some protection to these photographs. It states:
(c) Exemptions. The following records of the judicial branch shall be confidential. . . .
. . . .
(9) Any court record determined to be confidential in case decision or court rule on the grounds that
(A) confidentiality is required to
. . . .
(v) avoid substantial injury to innocent third parties;. . . .
The exemption, however, must be implemented with significant procedural safeguards to protect the constitutional rights discussed in section I of this opinion. Thus, the rule continues:
(B) the degree, duration, and manner of confidentiality ordered by the court shall be no broader than necessary to protect the interests set forth in subdivision (A);
(C) no less restrictive measures are available to protect the interests set forth in subdivision (A); and
(D) except as provided by law or rule of court, reasonable notice shall be given *16 to the public of any order closing any court record.
The trial court's order considered the "good cause" requirements in section 406.135, but did not consider the requirements of this rule. The trial court imposed a total ban on public viewing of this evidence, reasoning that the public should simply trust the testimony of the medical examiner who relied upon the undisclosed photographs because any further disclosure of the photographs would upset the victim's family. It further concluded that no less intrusive means existed to prevent harm to the family, and that other public records were available that provided detailed written descriptions of the photographs so that they did not need to be viewed.
With all due respect both to the trial court and the victim's family, these photographs have already been viewed by various people in law enforcement, by court personnel and lawyers, by this jury, and presumably by the grand jury. We can well understand that the family does not wish to have these photographs published in the press or on the internet; no one intends to let that happen. At this point, four representatives of the press are requesting the right to have four professional journalists view these photographs merely to confirm the accuracy of the verbal descriptions provided by witnesses under oath in the courtroom. We respect the privacy interests of the victim's family, but less restrictive measures exist to protect those interests while also protecting the competing interests engendered by a public trial.[3]

V. CONCLUSION
We do not mandate that the trial court enter any specific order pursuant to rule 2.051, except that the order must make provision for each of the petitioners in this proceeding to be allowed to have one professional journalist view these exhibits. We previously entered an unpublished order quashing the trial court's order. We stayed that order pending the issuance of this opinion. To permit an orderly resolution of this matter, in light of the Thanksgiving holidays and the resumption of the penalty phase in this case, this court stays the effect of this opinion until 1:30 p.m. on Monday, November 28, 2005, to permit the respondents to seek a further stay from the supreme court. Unless a stay is entered by the supreme court, the trial court must allow the Media to view these exhibits on November 28 even if motions for rehearing are filed in this court or our mandate has not issued.
The petition for review of order excluding press is granted.
VILLANTI, J., Concurs.
CASANUEVA, J., Concurs with opinion.
CASANUEVA, Judge, Concurring.
I fully concur in the holding in this case. However, I think it appropriate to review, albeit briefly, certain constitutional principles that intersect in this case. The First Amendment to the Constitution of the United States protects not only free speechthe Free Speech Clausebut also the right of the media to publish information in writing or orallythe Free Press *17 Clause. The Sixth Amendment, in contrast, protects an accused's right to a fair trial. Both these constitutional rights and protections are also set forth in the Florida Constitution.
The United States Supreme Court, in Craig v. Harney, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947), explained that what takes place in an open courtroom is public property and that those who see and hear what transpires therein can report it with impunity. Following from this notion of public property is the belief that, particularly in criminal matters, a responsible press is essential to effective judicial administration. Neb. Press Ass'n v. Stuart, 427 U.S. 539, 559-60, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).
At issue here is an order that not only prohibits the media from examining evidence introduced in an open public trial but also prohibits its publication. This court's opinion considers only the issue of media access to the evidence; the issue of restraint on publication is not presently before this court. A "prior restraint" on speech can be a judicial order that suppresses speech on the basis of its content in advance of its actual expression, i.e. publication. See Alexander v. United States, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). The elimination of prior restraints has been denominated a primary purpose of the First Amendment. Gannett Co. v. DePasquale, 443 U.S. 368, 393 n. 25, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). The trial court's order certainly appears to be, on its face, a prior and permanent restraint on publication of the sought-after photographs and videotapes. In this area we know at least two facts: the Supreme Court has not yet upheld a prior restraint; and the Court, in its majority opinions, has denied that First Amendment rights are absolute. Thus, at least in constitutional theory, a prior restraint can be implemented.
Returning to the issue presented, as additional grounds for this court's determination, I would hold that the line of First Amendment cases recognizing the public property interest in what occurs in this nation's criminal courts and the role of the media, under the First Amendment, to insure the proper judicial administration and function of the courts and its officers, permit the inspection of the challenged exhibits. As to the second issue, it remains for another day.
NOTES
[1] We review this order as an order excluding the press under Florida Rule of Appellate Procedure 9.100(d). At least three procedural matters warrant brief comment, and we have decided to relegate them to a footnote.

First, the trial court initially ruled orally on this matter in open court. Rule 9.100(d) permits review of orders excluding the press whether oral or written. This court, however, had no official transcript of proceedings when it received the petition. Moreover, some reported decisions have drawn fine distinctions between issues that can be reviewed under rule 9.100(d), as compared to review by common law certiorari. See Fla. Publ'g Co. v. Brooke, 576 So.2d 842 (Fla. 1st DCA 1991) (providing review by certiorari when review had been sought under rule 9.100(d)). We cannot review an oral ruling by certiorari. Accordingly, we ordered the trial court to render an expedited written order in this case.
Second, the Media consists of members of the press. Florida Rule of Appellate Procedure 9.100(d) gives this court authority to review orders excluding the public as well as the press. It is arguable that the trial court could place greater or different restrictions on members of the public who wished to review these exhibits merely out of curiosity and not for reasons related to freedom of the press. Accordingly, we have limited our holding to the Media before this court. We will review an order excluding the public if and when a member of the public seeks that review.
Finally, the Media assumes that our standard of review under rule 9.100(d) is comparable to the limited review we provide in a common law certiorari proceeding. Rule 9.100(d) is incorporated into the rule of appellate procedure that governs original proceedings because the drafters of the rule wished to provide the expedited review suggested by Justice England's dissent in English v. McCrary, 348 So.2d 293, 300 (Fla.1977). The Media has no right to a direct appeal from a subsequent final order entered by the trial court in this case. As to the Media, this order is arguably a final, appealable order. Because our outcome is not affected by the standard of review in this case, and because we must expedite this opinion, we do not further discuss the appropriate jurisdictional basis and standard of review for an order reviewed under rule 9.100(d).
[2] This court and the supreme court have held that clerks of circuit court are not subject to the chapter 119, the Public Records Act. See Times Publ'g Co. v. Ake, 645 So.2d 1003 (Fla. 2d DCA 1994), approved, 660 So.2d 255 (Fla. 1995). For purposes of this expedited opinion, we merely assume without deciding that these statutes could apply in this specific context.
[3] It is worth noting that the introduction of "gruesome" photographs is often an issue raised on appeal, especially in criminal cases. See, e.g., Rodriguez v. State, 919 So.2d 1252, (Fla. 2d DCA 2005); Rose v. State, 787 So.2d 786 (Fla.2001). Although the issue is rarely successful, it would be disturbing if this court or the supreme court were to reverse a criminal conviction based on the gruesomeness of photographs that no member of the public had ever seen.