# Third District Court of Appeal

## State of Florida

Opinion filed October 5, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1783
Lower Tribunal No. 95-15804
_____

**K.B., a Minor,**
Petitioner,

vs.

**Florida Department of Children & Families, et al.,**
Respondents.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Cindy S. Lederman, Judge.

DLA Piper LLP (US), and Fredrick H.L. McClure and J. Trumon Phillips (Tampa); Lawyers for Children America and Carolyn Salisbury and Paula Velazquez, for petitioner.

Karla Perkins, for the Department of Children and Families; Laura J. Lee (Sanford), for the Guardian ad Litem Program, for respondents.


Before SALTER, EMAS and FERNANDEZ, JJ.

SALTER, J.

K.B., a seventeen-year-old foster child, seeks the issuance of a writ of certiorari to quash a circuit court order directing K.B. to submit to an assessment by the Juvenile Addiction Receiving Facility (JARF) and to be transported by secure transport to and from that facility. That order immediately followed an involuntary, non-noticed drug test verbally directed by the court to be completed by K.B.

The response by the Department of Children and Families (DCF) acknowledges that the portion of the order requiring K.B. to be assessed at the JARF without a proper petition and hearing violated K.B.'s due process, and the response by the Guardian ad Litem Program (GAL) "offers no argument in opposition to the petition and does not submit any cause as to why the petition should not be granted."

We conclude that the order constituted a clear departure from the requirements of law and otherwise meets the standards for certiorari. We also conclude that the issue is not moot, such that the petition must be granted and the order quashed.

Facts

K.B. has lived in foster care for several years. On June 29, 2016, K.B. appeared for a dependency court hearing to quash a pickup order. The trial court asked where K.B. had been, and K.B. answered, "Out." The trial court followed

up:

> Court: So where have you been?
>
> K.B.: At a friend house [sic].
>
> Court: Where?
>
> K.B.: At a friend house [sic].
>
> Court: Who is the friend?
>
> K.B.: Can we call my attorney?

At this point, the attorney for the GAL Program advised the court that K.B. had an attorney ad litem who could not be present but wished to appear by phone. The court then asked for the phone number, but before arranging for the attorney to be called, inquired of the "Our Kids" representative[1] what the caseworker recommended. The caseworker responded, "We do have some concerns, Your Honor. And we would like to [have K.B.] submit to a drug test today."

Without further notice or consultation with K.B.'s attorney ad litem, the court ordered K.B. to submit to an on-the-spot drug test. The court told K.B., "Go have your drug test and then we'll have time to get your attorney." K.B. asked, "How can you order that if we're just here for a pick-up order?" The court told K.B. to have the drug test, "and then we'll get your lawyer on the phone, okay?"

---

[1] Our Kids of Miami-Dade/Monroe, Inc. is a Florida non-profit corporation providing community-based care, case management, and placement options for foster children.

3

After K.B. left the courtroom to be tested, her attorney ad litem was called and allowed to participate by speakerphone.

The attorney for the GAL Program then made an *ore tenus* motion requesting that K.B. be stabilized and sent to the JARF for assessment. The court stated that it would grant that request if K.B.'s drug test was positive. K.B.'s attorney ad litem interjected that "in regards to any drug assessment, there needs to be a separate hearing with a petition, separate hearing. I was only notified hours this morning [sic] that this would be just to quash a pick-up order, so I would object as to the -- if the Guardian is moving forward with this, then a petition needs to be filed for a JARF evaluation." The court noted the objection.

The representative from Our Kids and the attorney from the GAL Program also engaged in colloquy with the court regarding alleged Facebook printouts indicating that K.B. was using drugs and "prostituting." K.B. denied involvement with prostitution.

When the drug test results were brought into the hearing, they were positive for the recent use of marijuana and benzodiazepines. The trial court granted the GAL attorney's *ore tenus* motion and directed that K.B. be securely transported to the JARF for assessment. The attorney ad litem objected "as this is illegal, this is improper, and this is inappropriate under the Marchman Act, Chapter – Florida Statute 393. There needs to be a petition for evaluation. The child needs to be

4

evaluated by a substance abuse specialist and upon recommendation, then a separate hearing for a petition for an actual involuntary commitment. So this is completely illegal and I will be filing a motion."

Pursuant to the order challenged here, K.B. was allegedly shackled[2] and transported in the back of a squad car to the JARF, where she was confined for six days. The attorney ad litem's petition and appendix followed, with responses filed and served by DCF and GAL as previously noted.

Analysis

"Under Florida law, in order to obtain certiorari relief, a party must demonstrate '(1) a departure from the essential requirements of law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on post-judgment appeal.'" E.G. v. Dep't of Children and Families, 193 So. 3d 78, 80 (Fla. 3d DCA 2016) (quoting Damsky v. Univ. of Miami, 152 So. 3d 789, 792 (Fla. 3d DCA 2014)).

As DCF and GAL have candidly acknowledged in their responses, the orders entered by the trial court without prior notice and a petition violated K.B.'s due process. Under the pertinent provisions of the Marchman Act, sections 397.675, and 397.6811 through 397.6818, Florida Statutes (2016), involuntary assessment and stabilization is initiated by the submission of a petition to the court.

---

[2] DCF's response indicates that "secure transport" as used in the order does not necessitate the use of shackles.

The petition must explain the petitioner's reasons for believing that the respondent is substance abuse impaired and, because of such impairment, has lost the power of self-control regarding the substance abuse.

In the present case, K.B. was given no such notice and no petition was filed. These circumstances also violated K.B.'s fundamental due process rights, including K.B.'s right to be represented by counsel. <u>Hillsborough Cty. v. Albrechta</u>, 841 So. 2d 644 (Fla. 2d DCA 2003). Although we recognize that the Our Kids caseworker and veteran trial judge were experienced enough to recognize passive-aggressive responses by K.B.,[3] as well as possible signs of impairment, the Legislature has not authorized the trial court to cut through paperwork and summarily order a drug test, involuntary assessment, and "secure transport" without following the procedures set forth in the Marchman Act.

K.B.'s petition also addressed the obvious prospect—though not raised in the responses by DCF or the GAL—that the orders in question might be considered moot following K.B.'s release from the short-term assessment and stabilization at the JARF. K.B. asserts that her petition "is not subject to dismissal for mootness because it raises important questions related to the rights of foster children and the situation is likely to recur." We agree.

A well-settled exception to mootness applies to an issue that is "capable of

---

[3] After ordering the drug test, the trial court remarked that K.B. "has an attitude as well. A big attitude. I didn't appreciate it, quite frankly."

6

repetition, yet evading review." Kight v. Dugger, 574 So. 2d 1066, 1068 (Fla. 1990). The record supports K.B.'s argument that involuntary commitment before us now "is not the first time K.B. has been faced with potential confinement in the JARF without judicial compliance with the Marchman Act." K.B. is a foster child who remains under the jurisdiction of the court. The "evading review" prong is satisfied because the duration of an improperly-compelled Marchman Act commitment is generally five days or less, while the time necessary for the preparation of a certiorari petition and index (together with the time allowed for responses) will inevitably exceed five days.

For these reasons, we grant the petition and quash the order of June 29, 2016.