DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

D.H.,

Appellant,

v.

K.J.R.,

Appellee.

No. 2D22-3523

_____

February 7, 2024

Appeal from the Circuit Court for Pasco County; Kimberly Sharpe Byrd, Judge.

Sarah Sultenfuss of Sarah Baker Sultenfuss, P.A., Dade City, for Appellant.

K.J.R., pro se.

ATKINSON, Judge.

D.H. appeals the trial court's ex parte order, entered pursuant to Florida's Marchman Act, granting K.J.R.'s petition for the involuntary assessment and stabilization of D.H. for an alleged substance abuse impairment. D.H. contends that (1) the petition did not contain sufficient facts to satisfy the statutory criteria for involuntary assessment and stabilization and that (2) she was deprived of due process because

the trial court's entry of the order on an ex parte basis violated her right to counsel. For the reasons explained in this opinion, we reverse.

## Background

On September 26, 2022, K.J.R., the appellee and sister of D.H., filed a Petition and Affidavit for Involuntary Assessment and Stabilization of D.H. for an alleged substance abuse impairment pursuant to Florida's Marchman Act, sections 397.301 to 397.998, Florida Statutes (2022). This was not the first time K.J.R. had done so, as she acknowledged that she previously filed a petition against D.H. under the Marchman Act "last year for being on crystal meth."

K.J.R.'s 2022 petition was completed using a pre-prepared form containing various prompts for information followed by blank spaces where she could check "yes" or "no" and blank lines where she could fill in the requested information. Relevant to this appeal, K.J.R. checked "yes" in response to five statements and provided handwritten explanations in support of each response, as follows:

(1) K.J.R. checked "yes" to the statement that she believed D.H. was "substance abuse impaired . . . or has a co-occurring mental health disorder" and hand wrote the following in support: "[D.H.] is doing witchcraft[,] going to grave site[,] and talking to the devil. One min[ute] she is ok the next she is not. She is drinking a lot. The things she is doing and saying doesn't make sense."

(2) K.J.R. checked "yes" to the statement that she believed, "because of such impairment or disorder, [D.H.] has lost the power of self-control with respect to the substance abuse" and hand wrote the following in support: "[D.H.] has started again worshipping the Mexican devil. She doing witchcraft. The only time she has done [that] is . . . is when she's on drugs." (Ellipsis in original.).

2

(3) K.J.R. checked "yes" to the statement that she believed D.H. was "in need of substance abuse services" and was "incapable of appreciating . . . her need for services and making a rational decision in that regard" and hand wrote the following in support: "She is back drinking. When she drink[s] she does crystal meth. She move[d] here to [D]ade [C]ity 5 minutes from her drug dealer."

(4) K.J.R. checked "yes" to the statement that she believed, "without care or treatment, [D.H.] is likely to suffer from neglect or refuse to care for . . . herself and that such neglect or refusal poses a real and present threat of substantial harm to . . . her wellbeing" and hand wrote the following in support: "If someone doesn't make her get help and get clean[,] she will or can harm herself."

(5) K.J.R. checked "yes" to the statement that she believed "there is a substantial likelihood that [D.H.] has inflicted, or threatened to or attempted to inflict, or, unless admitted, is likely to inflict, physical harm on himself, herself, or another" and hand wrote the following in support: "only when she is drinking or using drugs."

Attached to the petition were a series of pictures, text messages, what appear to be screenshots of social media posts, and court filings. Most of the text messages and social media posts were in Spanish with no English translation provided, and, notwithstanding the language difference, they do not contain a date to indicate when the messages and posts were transmitted. Of the attachments that are comprehensible without a mastery of the Spanish language, only a small number relate to any alleged substance use by D.H. There are a few pictures in which it appears D.H. is drinking or smoking something, but the pictures are not clear as to the substances involved and there is no date to ascertain when the pictures were taken. The attachments otherwise suggest that

3

D.H. does not use drugs or alcohol, including an undated text message or social media message that D.H. may have authored stating she is "off drugs"; a May 18, 2022, court filing in which D.H. states she "has been sober and drug free since April 28, 2021"; and an August 8, 2022, court filing in which D.H. states she "has been drug free for approximately sixteen (16) months."

The clerk received K.J.R.'s petition at 4:24 p.m. Approximately one hour later, at 5:26 p.m., the trial court entered an ex parte order directing the sheriffs of the State to take D.H. into custody and deliver her "to the nearest appropriate licensed service provider" to "stabilize and/or assess [D.H.] involuntarily." The trial court stated the following in support of its ruling: "That it appearing [sic] that the Respondent, as a result of substance abuse, meets the criteria of law." D.H. was then served with a copy of the order and the petition. The record does not inform us if D.H. was committed to a facility for assessment and stabilization and, if so, for how long, but at some point D.H. retained counsel and timely appealed the trial court's ex parte order.

## Analysis

D.H. first contends on appeal that the petition did not contain sufficient facts to satisfy the statutory criteria for involuntary assessment and stabilization, a pure question of law that we review de novo. *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 314 (Fla. 2003); *see also P.G. v. E.W.*, 75 So. 3d 777, 780 n.1 (Fla. 2d DCA 2011) ("[W]e review de novo the trial court's application of the statute to th[e] facts."); *Terrace Bank of Fla. v. Brady*, 598 So. 2d 225, 227 (Fla. 2d DCA 1992), *disapproved on other grounds by Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 58 n.19 (Fla. 2001) ("Because this court can review the exact evidence (pleadings, exhibits, and depositions) which the trial court utilized in

4

entering its order, the presumption of correctness which the appellate court normally gives to the trial court's ruling is slight.").

The Marchman Act authorizes the involuntary commitment of a person to an appropriate facility for assessment and stabilization due to an alleged substance abuse impairment if the person meets the criteria in section 397.675. *See* § 397.6811.

> A person meets the criteria for involuntary admission if there is good faith reason to believe that the person is substance abuse impaired or has a co-occurring mental health disorder and, because of such impairment or disorder:
>
> (1) Has lost the power of self-control with respect to substance abuse; and
>
> (2)(a) Is in need of substance abuse services and, by reason of substance abuse impairment, his or her judgment has been so impaired that he or she is incapable of appreciating his or her need for such services and of making a rational decision in that regard, although mere refusal to receive such services does not constitute evidence of lack of judgment with respect to his or her need for such services; or
>
> (b) Without care or treatment, is likely to suffer from neglect or refuse to care for himself or herself; that such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and that it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services, or there is substantial likelihood that the person has inflicted, or threatened to or attempted to inflict, or, unless admitted, is likely to inflict, physical harm on himself, herself, or another.

§ 397.675. " '[S]ubstance abuse impaired' means a condition involving the use of alcoholic beverages or any psychoactive or mood-altering substance in such a manner as to induce mental, emotional, or physical problems and cause socially dysfunctional behavior." § 397.311(19). A petition is required to "state facts to support the need for involuntary assessment and stabilization," including the "reason for the petitioner's

belief that the respondent" meets the criteria for involuntary admission. § 397.6814. Under certain circumstances, a trial court is statutorily authorized to order the involuntary assessment and stabilization on an ex parte basis if, "relying solely on the contents of the petition," the respondent meets the criteria. § 397.6815(2).

Here, we conclude the petition does not set forth sufficient facts establishing a good faith reason to believe D.H. was substance abuse impaired. In support of her belief, K.J.R. refers to D.H.'s alleged involvement in "witchcraft" and with "the devil" and her attendance at an unexplained "grave site." There is no context or detail provided indicating the nature of these alleged activities such that a reader could conclude there is a good faith reason to believe the conduct—even if presuming it is unorthodox or does not "make sense" to K.J.R.— constitutes "socially dysfunctional behavior" or exhibits "mental, emotional, or physical problems." § 397.311(19). Especially in a society in which the right to freely exercise one's religion is guaranteed, *see* amend. I, U.S. Const.; art. I, § 3, Fla. Const., a petitioner's perception of a respondent's spiritual practices as peculiar cannot be sufficient to curtail the latter's physical liberty absent an explanation for how the precise nature of such practices have the potential to cause the harm the statute is designed to prevent or ameliorate.

While K.J.R. explains that D.H. "is ok" one minute but "the next she is not," K.J.R. does not elaborate on what it might mean for D.H. to be "not" "ok." And K.J.R.'s unelaborated description that D.H.'s actions and words do not "make sense" include no examples that would allow the reader to assess how aberrant D.H.'s behavior might actually be. What K.J.R. considers nonsensical could merely be notions misaligned with common sense; on the other hand, by not making sense K.J.R. might be

6

describing hysterical, dissociative, or threatening expressions or actions that could support a reasonable fear of imminent harm. K.J.R.'s vague description of D.H.'s behavior lacks necessary "facts," *see* § 397.6814, to allow the court to determine whether the respondent meets the criteria for involuntary assessment and stabilization.

The only reference to any alcohol or substance use in K.J.R.'s petition is the allegation that D.H. is "drinking a lot," which—like K.J.R.'s reference to nonsensical behavior—is too vague and indefinite to indicate a "substance abuse impairment," *see* § 397.675(2)(a). And while some of the attachments indicate that D.H. may have had substance abuse issues in the past, none of them indicates any potential substance abuse impairment at the time the petition was filed. In fact, K.J.R.'s responses to other prompts on the form petition she filled out tacitly admit that her belief of D.H.'s substance abuse impairment was speculative. K.J.R. alleged that the "only time [D.H.] has done [witchcraft] is . . . is when she's on drugs." (Ellipsis in original.). However, K.J.R. offered no personal knowledge that D.H. was "on drugs" at the time the petition was filed, only the *presumption* that D.H. must have been on drugs because she was "doing witchcraft." Similarly, K.J.R. elsewhere alleged that D.H. was "back drinking" and "when she drink[s] she does crystal meth." Again, this allegation is merely a speculative theory that because D.H. is "drinking" she is using "crystal meth."

The petition at issue here is far too vague and speculative to establish a good faith reason to believe D.H. met the statutory criteria warranting the extreme remedy of infringing upon her liberty by involuntarily committing her to a facility for substance abuse assessment and stabilization—especially where, as here, the trial court awarded that remedy on an ex parte basis with no evidentiary support. Because the

7

petition did not establish a good faith reason to believe D.H. met the statutory criteria for involuntary assessment and stabilization, the trial court erred in entering the ex parte order.

We acknowledge the additional, compelling argument D.H. raises that the trial court violated her due process right to be represented by counsel by entering the order under review on an ex parte basis. *See* § 397.681(2) ("A respondent has the right to counsel at every stage of a proceeding relating to a petition for his or her involuntary assessment and a petition for his or her involuntary treatment for substance abuse impairment."); § 397.501(8) ("Each individual must be informed that he or she has the right to be represented by counsel in any involuntary proceeding for assessment, stabilization, or treatment and that he or she . . . may apply immediately to the court to have an attorney appointed if he or she cannot afford one."); *Hillsborough County v. Albrechta*, 841 So. 2d 644, 645 (Fla. 2d DCA 2003) ("Because due process is implicated, we conclude that a defendant has a constitutional right to be represented by counsel in Marchman Act proceedings." (citing *Vitek v. Jones*, 445 U.S. 480, 491–92 (1980))); *K.B. v. Fla. Dep't of Child. & Fams.*, 202 So. 3d 909, 912 (Fla. 3d DCA 2016) (describing the right to be represented by counsel in connection with an involuntary Marchman Act proceeding as a "fundamental due process right[]"). We are not the first panel of this court to recognize the inconsistency between a person's constitutional and statutory right to counsel in an involuntary Marchman Act proceeding and the Act's provision for an ex parte procedure under certain circumstances. *See T.L. v. F.M.*, 289 So. 3d 494, 509 (Fla. 2d DCA 2019) (Lucas, J., concurring) ("How can a Marchman Act respondent have a right to counsel but not a preliminary court hearing? . . . Without a court hearing in which to present and challenge evidence,

8

the lawyer's role in this Marchman Act proceeding (such as it is) becomes so cabined it scarcely resembles representation."); *Cole v. State*, 714 So. 2d 479, 483 n.5 (Fla. 2d DCA 1998) ("[T]hat the court may enter an ex parte order involuntarily admitting the client for assessment and stabilization *without the appointment of counsel* seemingly conflicts with the direction in section 397.681(2) that a respondent has the right to counsel 'at every stage' of an involuntary admission proceeding." (emphasis in original)).  However, we need not address that inconsistency or D.H.'s due process claim given our conclusion that the petition was facially insufficient to meet the statutory criteria for D.H.'s involuntary assessment and stabilization.  *See Sarasota-Herald Tribune v. State*, 924 So. 2d 8, 13 (Fla. 2d DCA 2005) ("[W]e are required, whenever possible, to resolve a dispute without reaching the constitutional issues and without declaring statutes unconstitutional.").

Accordingly, we reverse the trial court's ex parte order and remand for the trial court to dismiss the petition.

Reversed and remanded with instructions.

KELLY and MORRIS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.