# Third District Court of Appeal

## State of Florida

Opinion filed July 24, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1653
Lower Tribunal No. 23-10283 CC

_____

**Beny Krasner,**
Appellant,

vs.

**Miami-Dade County,**
Appellee.

An Appeal from a non-final order from the County Court for Miami-Dade County, Maria D. Ortiz, Judge.

L. Turner Law, P.A., and Lauren N. Peffer (Boca Raton), for appellant.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Cristina Rabionet and Sabrina Levin, Assistant County Attorneys, for appellee.

Before SCALES, GORDO and BOKOR, JJ.

SCALES, J.

Appellant Beny Krasner ("Krasner") appeals an August 21, 2023 order of the county court ("Rule 1.540 Order") that denied Krasner's August 3, 2023 amended Florida Rule of Civil Procedure 1.540(b) motion ("Rule 1.540(b) Motion"). The Rule 1.540(b) Motion sought to vacate the trial court's April 14, 2023 order captioned, "Order Granting Ex Parte Verified Petition to Seize One Terrier Mix" ("Seizure Order"). Krasner asserted that the Seizure Order, which authorized appellee Miami-Dade County (the "County") to seize Krasner's dog, was void because it was entered without affording Krasner due process. Because the County failed to make either a particularized or a generalized showing that warranted an *ex parte* proceeding, we reverse the Rule 1.540 Order, and remand with instructions to the trial court to vacate the Seizure Order and conduct any further proceedings it deems necessary.

## I. Relevant Background

Krasner owns a terrier mix named Daisy. In 2021, Daisy bit and wounded a jogger. The County, through its Animal Services Department (the "Department"), designated Daisy a "dangerous dog" pursuant to section 5-22(d) of the Miami-Dade County Code of Ordinances. Krasner appealed the Department's designation and an administrative hearing officer affirmed this designation. The County allowed Krasner to keep Daisy on the condition that

2

Daisy be muzzled, restrained by leash or chain, and under a person's control when outside a proper enclosure.

Then, some two years later, during a walk on February 2, 2023, with Daisy not muzzled, Daisy bit and wounded another passerby. Because Daisy was already designated a "dangerous dog," the Department decided that euthanasia was warranted, subject to administrative review. Pursuant to section 5-22(g) of the Miami-Dade County Code of Ordinances, the County filed a verified petition in the county court seeking an order authorizing the Department to seize Daisy. The county court, conducting its proceedings *ex parte*, granted this petition and, on April 14, 2023, entered the Seizure Order. The Department seized Daisy on April 16, 2023.

Krasner did not appeal, nor seek rehearing of, the Seizure Order. Instead, pursuant to section 5-22(i) of the County Code, Krasner sought an administrative hearing on the Department's decision to euthanize Daisy. On July 19, 2023, after conducting a hearing on the same day, the administrative hearing officer affirmed the Department's decision to euthanize Daisy.

After failing to prevail at the administrative hearing, and without appealing the administrative euthanasia order to the circuit court, Krasner, on August 3, 2023, filed in the county court the Rule 1.540(b) Motion to vacate the Seizure Order. In the Rule 1.540(b) Motion, Krasner asserted that

3

the Seizure Order, as a product of *ex parte* proceedings, violated his due process. The county court denied the Rule 1.540(b) Motion, and on August 21, 2023, rendered the Rule 1.540 Order, stating two bases: (i) Krasner received due process at the administrative hearing challenging the Department's designation and euthanasia decision; and (ii) the county court lacks jurisdiction to adjudicate the Rule 1.540(b) Motion "because the hearing officer's determination to euthanize the dog has been properly appealed to the Appellate division of the Eleventh Judicial Circuit Court."[1]

Krasner timely appealed the county court's ruling.

**II. Krasner's Arguments**

Krasner argues on appeal, as he did below, that the trial court should have vacated the Seizure Order because (i) there exists no statutory

---

[1] The County in its answer brief represents, and our record reflects, that, notwithstanding the language of the Rule 1.540 Order, Krasner did not appeal the administrative euthanasia order to the circuit court's appellate division. According to the County, the Rule 1.540 Order's misstatement in this regard stemmed from an inaccurate oral representation made by Krasner's counsel at the hearing on the Rule 1.540(b) Motion. In any event, as discussed below and in footnote 6, *infra*, the procedures related to the dangerous dog determination and resulting penalty are separate and distinct from those associated with the proceedings that resulted in the county court's rendition of the Seizure Order. Hence, the availability of Florida Statutes section 767.12(4)'s appellate remedy (authorizing an appeal to the circuit court of a final determination of a dangerous dog designation or resulting penalty) has no bearing on the county court's jurisdiction to adjudicate the Rule 1.540(b) Motion that was directed toward the Seizure Order.

authority for the County to invoke the jurisdiction of the county court to obtain seizure orders, and (2) even if the County properly invoked the jurisdiction of the county court to obtain the Seizure Order, nothing in the State's statutory scheme, the County's code of ordinances, or the Florida Rules of Civil Procedure authorizes such proceedings to occur *ex parte*.

### III. Analysis[2]

At the outset, we note that our focus is *exclusively* on the procedure followed by the County in this case to seize or "confiscate" Krasner's dog, Daisy. We agree with the County that the process for the *seizure* of a dog is separate and distinct from the processes for the *designation* of a dog as dangerous and the resulting penalties. In this opinion, other than to provide background, we are not called upon to address the administrative protocols related to either Daisy's designation as a "dangerous dog" or the administrative euthanasia order entered by the administrative hearing officer.

A. The "dangerous dog" regulatory framework

---

[2] We review the Rule 1.540 Order *de novo* because the legal questions presented – whether the confiscation proceedings conducted in the county court were authorized and, if so, whether such proceedings conducted on an *ex parte* basis were appropriate – are pure questions of law. Wright v. City of Miami Gardens, 200 So. 3d 765, 770 (Fla. 2016).

5

We begin with a general description of the framework governing the County's "dangerous dog" processes. Part II of chapter 767 of the Florida Statutes codifies a comprehensive process for local animal control authorities to investigate complaints of dangerous dogs.[3] Section 767.12 contains an administrative protocol for designating dogs as "dangerous," an administrative hearing and penalty regime, and an appellate process for review by the circuit court of the administrative designation, penalty or both. See § 767.12(1)-(5), Fla. Stat. (2023).

Important to this case, section 767.12(1)(a) authorizes local animal control authorities to immediately confiscate a dog being investigated "because of a severe injury to a human being[.]" This subsection reads as follows:

> An animal that is the subject of a dangerous dog investigation because of severe injury to a human being may be immediately confiscated by an animal control authority, placed in quarantine, if necessary, for the proper length of time, or impounded and held. The animal may be held pending the outcome of the investigation and any hearings or appeals related to the dangerous dog classification or any penalty imposed under this section. If the dog is to be destroyed, the dog may not be destroyed while an appeal is pending. The owner is responsible for payment of all boarding costs and other fees as may be

---

[3] Section 767.11(1)(a)-(c) of the Florida Statutes (2023), generally defines a "dangerous dog" as a dog that either has attacked a human being, killed or severely injured another domestic animal, or chased a person in a menacing fashion.

6

required to humanely and safely keep the animal pending any hearing or appeal.

§ 767.12(1)(a), Fla. Stat. (2023).

Section 767.14 expressly authorizes local governments to adopt procedures and criteria for the implementation of chapter 767.[4] Pursuant to section 767.14, the County adopted section 5-22 of its Code of Ordinances. Relevant to this case is section 5-22(g), captioned "Confiscation and confinement." Although nothing in section 767.12(1)(a)'s immediate confiscation authority references any court involvement in the confiscation process, the County's section 5-22(g) provides, in relevant part:

> Animal Control Officers and law enforcement officers are hereby authorized to confiscate dogs that are the subject of dangerous dog investigations, *and the Director is hereby authorized to institute appropriate proceedings in any court of competent jurisdiction if necessary to effectuate the seizure of the dog.*

---

[4] Section 767.14 reads, in relevant part, as follows:

> This act does not limit any local government . . . from adopting an ordinance or a policy, respectively, to address the safety and welfare concerns caused by attacks on persons . . . ; placing further restrictions or additional requirements on owners of dogs that have bitten or attacked persons . . . ; or developing procedures and criteria for the implementation of this act, provided that no such regulation is specific to breed, weight, or size and that the provisions of this act are not lessened by such additional regulations or requirements.

§ 767.14, Fla. Stat. (2023).

Miami-Dade County, Fla., Code § 5.22(g) (emphasis added).

        B. <u>Whether the County properly invoked the jurisdiction of the county court to obtain the Seizure Order</u>

Krasner is correct that no portion of section 767.12(1)(a) – authorizing the immediate confiscation of a dog subject to a "dangerous dog investigation because of severe injury to a human being" – contains any specific authorization for an animal control authority to invoke the jurisdiction of the county court. The Legislature's broad delegation of implementation authority to local governments found in section 767.14, however, provides specific authorization for a local government, such as the County, to "develop[] procedures and criteria for the implementation" of section 767.12(1)(a).  While it is well established that a local government ordinance must not conflict with a controlling provision of a state statute, <u>see</u> <u>City of Miami Beach v. Nichols</u>, 314 So. 3d 313, 316 (Fla. 3d DCA 2020), an ordinance adopted and implemented consistent with its authorizing statute will be upheld. <u>See</u> <u>Verdi v. Metro. Dade Cnty.</u>, 684 So. 2d 870, 873 (Fla. 3d DCA 1996) (holding that chapter 162 of the Florida Statutes, authorizing a local government to adopt an alternate code enforcement system, allows the local government to institute any lawful administrative hearing procedures not limited by the authorizing statute).

8

Recognizing the problems inherent in confiscating a person's dog,[5] the County adopted a protocol in section 5-22(g) that allows the Department to obtain, in a court of competent jurisdiction, a court order to effectuate and facilitate such confiscation. Indeed, the Seizure Order – which is a final order regarding the seizure process – provided clear, unambiguous, and detailed directions to animal control officers effectuating the seizure such that owners whose animals are being seized are fully apprised of the specific and limited scope of the officers' seizure authority:

> The County, through the officers of its Animal Services Department, is directed to announce its presence at the front door or gate of the subject property and direct [Krasner] to comply by giving the County custody of Daisy. If [Krasner] fails to comply, Miami-Dade Animal Services Department is authorized, in conjunction with the Miami-Dade County Police Department and any other police department with jurisdiction over the area where the subject property is located, to enter and search the subject property and the curtilage thereof, to seize the dog, and to use any and all force necessary, including breaking into the subject property, which may be done at any time, day or night, weekday, weekend, or holiday.

We see no inconsistency between section 5-22(g)'s provision granting the County the authority to institute appropriate judicial proceedings and section 767.12(1)(a)'s specific legislative authorization for animal control authorities to "immediately confiscate[]" animals subject to a dangerous dog

---

[5] For example, the dog owner might try to sequester the dog and not allow the animal control officer entry onto private property.

9

investigation because of severe injury inflicted by the dog to a person. The trial court did not err in denying the Rule 1.540(b) Motion on this ground.

C. Whether *ex parte* proceedings were "appropriate proceedings" under section 5-22(g)

Krasner also argues that, even if the County were authorized to invoke the jurisdiction of the county court to obtain a seizure order, the County's use of *ex parte* proceedings to obtain the instant Seizure Order constituted a due process violation. We conclude, on this record, that the County's *ex parte* proceedings to obtain the Seizure Order were not "appropriate proceedings" under section 5-22(g).

We have held, albeit in another context, that *ex parte* proceedings are "extraordinary," and orders entered on *ex parte* proceedings "should be granted sparingly." Shouman v. Am. Express Travel Related Servs. Co., 566 So. 2d 875, 876 (Fla. 3d DCA 1990) (reversing an *ex parte* injunction order for failure to comply with Florida Rule of Civil Procedure 1.610(a)'s requirements); see Bieda v. Bieda, 42 So. 3d 859, 861 (Fla. 3d DCA 2010) ("A temporary injunction without notice is an extraordinary remedy and the order must strictly comply with Rule 1.610.").

The County commendably concedes that nothing in either Part II of chapter 767, section 5-22(g), or Florida's Rules of Civil Procedure specifically contemplates, much less authorizes, the use of *ex parte*

10

proceedings to obtain a seizure order. The County, rather, argues from a practical and policy perspective, that giving a dog owner prior (or even contemporaneous) notice of a pending confiscation under section 767.12(1)(a) could frustrate its efforts to seize the dog subject to confiscation. The County also argues that proceedings conducted with notice may cause delay, thus frustrating the "immediate" confiscation envisioned by the statute.

At oral argument, though, the County conceded that such concerns were merely "in the ether," and that nothing in its verified petition, or in the resulting Seizure Order, recited any need, either generalized or particularized, for the trial court's conducting the proceedings *ex parte*. We have been shown, and our own efforts have revealed, no authority authorizing a proceeding such as this one to proceed entirely on an *ex parte* basis.

The only *ex parte* proceedings expressly permitted by the Florida Rules of Civil Procedure are those related to temporary injunctions. Fla. R. Civ. P. 1.610(a)(1). Notably, rule 1.610(a)(1)(A) requires that petitions seeking such *ex parte* temporary injunctions include verified facts that immediate and irreparable harm will result if the injunction is not granted on an *ex parte* basis, while rule 1.610(a)(2) requires that any *ex parte* injunction

11

order contain findings of the irreparable harm and give reasons why the order was granted without notice. A trial court commits reversible error by entering an *ex parte* injunction without strict compliance with rule 1.610(a). See Maldonado v. Buchsbaum, 259 So. 3d 302, 305 (Fla. 4th DCA 2018) (holding that an *ex parte* temporary injunction was deficient because, among other things, "the trial court failed to endorse the date and hour of entry," as required by rule 1.610(a)(2)). We believe due process requires of the County no less procedural safeguards in obtaining a final *ex parte* seizure order than would be required if it were to obtain a temporary *ex parte* injunction.

To be clear, we are not holding that *ex parte* proceedings are, per se, not "appropriate proceedings" under section 5-22(g). Indeed, the County makes compelling policy arguments why such seizure proceedings may, under certain circumstances, be conducted *ex parte*. But such an *ex parte* proceeding to obtain a seizure order is not an "appropriate" proceeding under section 5-22(g) without a showing to the trial court of the need to conduct such a proceeding *ex parte*. Because the County made no showing, neither particularized nor generalized, and the Seizure Order contained no findings, for the necessity of conducting the proceedings *ex parte*, we conclude the resulting Seizure Order is void, having been entered without due process, and the trial court reversibly erred in denying the Rule 1.540(b) Motion

seeking to vacate the Seizure Order.[6] See, e.g., First Call 24/7, Inc. v. Rios, 373 So. 3d 1176, 1178 (Fla. 3d DCA 2022) (reversing trial court's denial of motion to vacate judgment entered without notice).

**IV. Conclusion**

We reverse the Rule 1.540 Order and remand with instructions for the trial court to vacate the Seizure Order and to conduct whatever further proceedings, if any, that the trial court deems necessary.[7]

---

[6] As alluded to in footnote 1, *supra*, in the challenged Rule 1.540 Order, it appears the trial court might have conflated the issue of whether its Seizure Order should be vacated because of the *ex parte* nature of the seizure proceedings, with the separate and distinct issue of whether, in the administrative process related to designation and penalties, Krasner was denied due process. While the trial court's Rule 1.540 Order correctly states that the county court lacks jurisdiction to review the administrative proceedings associated with Daisy's designation and resulting penalty, the county court plainly had limited jurisdiction to adjudicate the Rule 1.540(b) Motion challenging the trial court's own Seizure Order. Miller v. Fortune Ins. Co., 484 So. 2d 1221, 1223 (Fla.1986) ("Once the litigation is terminated and the time for appeal has run, that action is concluded for all time. There is one exception to this absolute finality, and this is rule 1.540, which gives the court jurisdiction to relieve a party from the act of finality in a narrow range of circumstances.")

[7] We recognize that, because Daisy has long since been seized, the trial court's vacatur of the Seizure Order may provide Krasner with no practical relief. We reject, however, the County's mootness argument because the due process issues raised in Krasner's appeal are likely to recur and evade review. See K.B. v. Fla. Dep't of Child. & Fams., 202 So. 3d 909, 912 (Fla. 3d DCA 2016).

13

Reversed and remanded.